SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Globe Motor Company v. Ilya Igdalev (074996) (A-43-14)

**Argued January 19, 2016 – Decided June 29, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal concerning an action for breach of a settlement agreement that resolved prior litigation, the Court considers whether the record before the motion court, viewed under the summary judgment standard prescribed by Rule 4:46-2(c), established plaintiffs' right to judgment as a matter of law.

The prior litigation involved claims that Globe Motor Company (Globe) asserted against a limited liability company and its members, defendants Ilya Igdalev (Ilya) and Julia Igdalev, for violating an agreement which precluded defendants from exporting certain Mercedes Benz vehicles to foreign countries.  The parties settled the action and executed a Settlement Agreement and Release which required defendants to pay the settlement amount of $75,000.  The settlement amount was paid through two certified checks.  The remitter on one check was Povolotsky, later identified as Ilya's friend and business associate who was affiliated with Auto Point, Limited.  The second check was a cashier's check which referenced a Wells Fargo Bank branch located in Minnesota.  After the settlement amount was paid, Globe dismissed its lawsuit, with prejudice.

Auto Point subsequently filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code.  Approximately one year later, the bankruptcy trustee filed an adversary proceeding against Globe and its attorneys, contending that the funds paid to settle Globe's action belonged to Auto Point, and the transfers of these funds to Globe were voidable.  Globe and its attorneys resolved the adversary proceeding by a payment of $22,500 to Auto Point's bankruptcy estate.  Because the parties settled this claim, the bankruptcy court did not determine whether the trustee was entitled to the funds.  Globe and its attorneys then filed this action for a declaratory judgment, asserting that defendants had agreed to pay the settlement amount free and clear from claims of others, and were therefore liable for breach of contract, fraud, and other wrongful conduct.  The parties filed cross-motions for summary judgment.  Plaintiffs relied on the settlement agreement, the Auto Point bankruptcy proceedings, and their settlement payment in the adversary proceeding.  Defendants asserted that Ilya asked Povolotsky, who was holding more than $75,000 owed to him from prior dealings, to pay the settlement on defendants' behalf.

The trial court granted plaintiffs' motion for summary judgment, and denied defendants' cross-motion. The judge reasoned that, based on the trustee's allegations that the $75,000 payment was made by Auto Point and could be recovered in the bankruptcy proceeding, defendants had not satisfied their obligations under the settlement agreement.  The Appellate Division affirmed that determination, with one judge dissenting.  The panel majority found that, based on the trustee's claim, the settlement amount paid to Globe came from Auto Point's assets, and the trial court therefore properly granted summary judgment to plaintiffs.  The dissenting judge concluded that the panel majority improperly construed the facts and drew inferences in the light most favorable to plaintiffs, rather than defendants, who were the non-moving parties, and also erroneously based its conclusions on untested allegations in the adversary proceeding.  Defendants appealed to this Court as of right under Rule 2:2-1(a)(2) based on the dissent in the Appellate Division.

**HELD:**  The record before the motion court, when viewed under the summary judgment standard prescribed by Rule 4:46-2(c), did not establish plaintiffs' right to judgment as a matter of law.  When all legitimate inferences are drawn in defendants' favor, as required by the summary judgment standard, there exists a genuine issue of material fact on the critical question of whether the settlement monies paid to Globe were Auto Point's assets, or, instead, were owned by defendant's friend and owed to defendant.

1. The Court reviews the grant of summary judgment under the same standard applicable to the motion judge under Rule 4:46-2(c).  That standard compels the grant of summary judgment if the pleadings, depositions, answers to

1

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. In order to demonstrate the existence of a genuine issue of material fact, the opposing party must do more than point to any fact in dispute. Once the moving party presents sufficient evidence in support of the motion, the opposing party must demonstrate, by competent evidential material, that a genuine issue of fact exists. (pp. 10-12)

2. A court deciding a summary judgment motion does not draw inferences from the factual record, as does the factfinder in a trial. Instead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party. The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply at trial. (pp. 12-13)

3. The court's task is to determine whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving party. When the movant is the plaintiff, the motion court must view the record with all legitimate inferences drawn in the defendant's favor, and decide whether a reasonable factfinder could determine that the plaintiff has not met its burden of proof. If a reasonable factfinder could decide in the defendant's favor, the court must deny summary judgment. (pp. 13-14)

4. A settlement agreement is governed by general principles of contract law. To demonstrate a breach of contract, a plaintiff must demonstrate that the parties entered a contract containing certain terms; plaintiff performed as the contract required; defendant did not perform as required, and breached the contract; and defendant's breach caused plaintiff to suffer a loss. In this case, the initial task before the motion court was to determine the parties' intended meaning of the agreement's payment provision, which they sharply disputed. Plaintiffs asserted that the contract required the payment of funds that were owned by defendants and that would not be subject to future claims; defendants countered by asserting that the agreement required only that they provide the funds to plaintiffs by certified or attorney trust account check, made payable to plaintiffs' counsel. To resolve this question, the court must determine the parties' intent from the contract language, and cannot rewrite the contract. (pp. 15-17)

5. The motion court did not adopt either party's construction of the settlement agreement's payment term, or state its own conclusion as to the meaning of the provision. The court found only that the objective intent stated in the agreement was for Globe to receive $75,000. The court, in granting summary judgment, therefore failed to construe a critical term of the agreement, and, notwithstanding the unresolved meaning of the payment term, concluded that plaintiffs established a breach of the settlement agreement. (pp. 17-18)

6. When all legitimate inferences are drawn in defendants' favor, as the summary judgment standard requires, the record presents a genuine issue of material fact on the critical question of whether the settlement funds belonged to Auto Point, as the trustee alleged, or were owned by defendant's friend and owed to defendant. The bankruptcy court did not determine this issue since the parties settled the adversary proceeding, and the critical factual question was therefore left undecided in the summary judgment record. A reasonable factfinder considering the evidence in the record, with all legitimate inferences drawn in defendants' favor, could find that plaintiffs did not prove by a preponderance of the evidence that defendants breached the payment obligations imposed by the settlement agreement. As a result, plaintiffs were not entitled to judgment as a matter of law on the breach of contract claim. (pp. 19-20)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE PATTERSON's opinion.**

GLOBE MOTOR COMPANY, a
corporation of the State of
New Jersey, and THE MARGOLIS
LAW FIRM, LLC,

    Plaintiffs-Respondents,

       v.

ILYA IGDALEV and JULIA
IGDALEV,

    Defendants-Appellants.


       Argued January 19, 2016 – Decided June 29, 2016

       On appeal from the Superior Court, Appellate
       Division, whose opinion is reported at 436
       N.J. Super. 594 (App. Div. 2014).

       Christopher J. Koller argued the cause for
       appellants.

       Michael A. Mark argued the cause for
       respondents.

    JUSTICE PATTERSON delivered the opinion of the Court.

    This appeal as of right arises from defendants' alleged breach of a settlement agreement executed by defendants and one of the plaintiffs in this action, Globe Motor Company (Globe), to resolve prior litigation between the parties. Shortly after defendants sent two checks totaling $75,000 to plaintiffs to settle the earlier action, a Trustee appointed to represent the estate of an insolvent Minnesota entity brought an adversary

proceeding against plaintiffs. The Trustee demanded that plaintiffs disgorge the settlement funds, on the ground that those funds had belonged to the bankrupt entity, not to defendants, and that the transactions were therefore voidable under provisions of the United States Bankruptcy Code, 11 U.S.C.A. §§ 544 and 548. Plaintiffs paid $22,500 to resolve the bankruptcy Trustee's claim.

Plaintiffs filed this action against defendants, seeking to recover the money that they paid to settle the bankruptcy proceeding as well as attorneys' fees and costs. They asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and indemnification. The motion judge entered summary judgment for plaintiffs on their breach of contract claim. An Appellate Division panel affirmed that determination, with one judge dissenting.

We hold that the motion judge improperly granted summary judgment in plaintiffs' favor. We conclude that the record before the motion court, viewed in accordance with the summary judgment standard prescribed by Rule 4:46-2(c), did not establish plaintiffs' right to judgment as a matter of law. We therefore remand this case to the motion court for the development of a factual record, and a determination of plaintiffs' claims based on that record.

I.

The prior litigation that gave rise to this matter was instituted by plaintiff, the Margolis Law Firm, LLC (Margolis), as counsel for Globe, against a New Jersey limited liability company, Gemp, LLC (Gemp) and its members, defendants Ilya Igdalev (Ilya) and his wife Julia Igdalev (Julia).[1]  In October 2009, the parties resolved the matter.  They executed an undated Settlement Agreement and Release (Settlement Agreement) that provided for the payment of the settlement amount in accordance with the following terms:

> That ILYA and JULIA shall jointly pay to GLOBE the amount of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, by certified or attorney trust account check payable to ["]The Margolis Law Firm LLC, as attorneys for Globe Motor Company" and delivered to The Margolis Law Firm LLC not later than 1:00pm on Friday, October 2, 2009 TIME BEING EXPRESSLY MADE OF THE ESSENCE.

The Settlement Agreement required Julia to pay Globe the entire $75,000 in the event that Ilya "does not pay, for any reason or no reason, any portion of the settlement amount."

---

[1] According to a certification submitted by Globe, the litigation "arose out of [defendants'] violation against Globe and [their] agreements with purchasers of several Mercedes Benz vehicles which were, pursuant to said agreements, not to be exported to foreign countries[,]" but "were in fact exported in violation of the aforesaid agreements."  Globe sought damages for breach of contract and fraud, among other claims.

On or about October 1, 2009, Margolis received two certified checks in amounts totaling $75,000. As the Settlement Agreement required, each check was made payable to "The Margolis Law Firm LLC, as attorneys for Globe Motor Company." One check, in the amount of $63,000, was drawn on a bank identified as M&I Marshall & Ilsley Bank, with no address. The check stated that the remitter was Mike Povolotsky, an individual later identified as a friend and business associate of Ilya. Povolotsky was affiliated with Auto Point, Limited (Auto Point), an entity organized under the laws of Minnesota. The second check, in the amount of $12,000, was a cashier's check drawn on Wells Fargo Bank N.A., and included the address of a Wells Fargo branch in Golden Valley, Minnesota.

Neither Globe nor Margolis objected to the manner in which the settlement funds were paid, and the checks apparently cleared. Five months later, Globe and defendants executed a stipulation dismissing Globe's action, with prejudice and without costs.

Following the dismissal of Globe's action, Auto Point filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code (Chapter 7), 11 U.S.C.A. §§ 701-784, in the United States Bankruptcy Court for the District of Minnesota. The Bankruptcy Court appointed a Trustee to represent Auto Point's bankruptcy estate. Almost a year later,

the Trustee instituted an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure §§ 7001, 7003 and 7004 against Globe and Margolis. The Trustee contended that the $75,000 used to settle Globe's action against defendants belonged to Auto Point and that the transfers of those funds to plaintiffs were voidable pursuant to 11 U.S.C.A. §§ 544 and 548. The Trustee alleged that Auto Point had no obligation to Globe or Margolis and had received less than "a reasonably equivalent value" in exchange for the $75,000 disbursement. In the alternative, the Trustee alleged that Auto Point was either insolvent when the payment was made, or became insolvent because of the payment.

Plaintiffs retained Minnesota bankruptcy counsel. They eventually resolved the adversary proceeding by paying $22,500 to Auto Point's bankruptcy estate. According to plaintiffs, they decided to settle the matter on the advice of their bankruptcy counsel. Because of the settlement, the United States Bankruptcy Court for the District of Minnesota did not determine whether the Trustee was entitled to the funds.

Globe and Margolis then filed this declaratory judgment action pursuant to N.J.S.A. 2A:16-52. They alleged that in the Settlement Agreement that resolved the prior litigation, defendants had agreed to pay the settlement amount "free and clear from claims of others and not subject to surrender," and

5

were therefore liable for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and common-law indemnification. They also asserted a claim against Julia for contractual indemnification. Globe and Margolis claimed damages in the amount that they had paid to settle the claims of the Trustee, as well as attorneys' fees and costs for both the Minnesota action and the declaratory judgment action.

The parties filed cross-motions for summary judgment. In support of their motion for summary judgment, plaintiffs set forth the terms of the Settlement Agreement, presented the checks received in payment of the settlement amount, recounted the history of the Minnesota bankruptcy proceeding, and documented their claims for damages and attorneys' fees.

In a certification filed in support of defendants' summary judgment motion, Ilya stated that at the time of the settlement of Globe's action against him, his "New Jersey bank accounts had been restrained due to allegations in a criminal action against [him]." According to Ilya, he asked Povolotsky, who "was holding more than $75,000.00 of money owed to [Ilya] from prior dealings," to "make checks payable [to Margolis], in the total amount of $75,000.00 in settlement of this case." Ilya represented that neither he nor Julia had been asked to indemnify plaintiffs or hold them harmless from any claims, and

6

did not do so, and that the Settlement Agreement did not mandate that "the funds were to come from my wife or myself, individually, or any specific payor." Defendants' motion was also supported by a certification signed by Julia, adopting the contentions set forth in Ilya's certification and further noting that plaintiffs "accepted [the checks] without protest[.]"

The court granted plaintiffs' motion for summary judgment, and denied defendants' cross-motion for summary judgment. Although the motion judge did not individually address each of plaintiffs' claims, his grant of summary judgment was premised on plaintiffs' cause of action for breach of contract.[2] The judge reasoned that, by virtue of the Trustee's allegation that the $75,000 was transferred by Auto Point and could be recovered by Auto Point's estate in bankruptcy, defendants had not satisfied their obligations under the Settlement Agreement.

The motion court entered judgment for $22,500, the amount that plaintiffs had paid to settle the Chapter 7 adversary proceeding brought by the Trustee of Auto Point's bankruptcy estate. The court evidently concluded that Julia was

---

[2] The motion judge did not specifically mention plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment or common-law indemnification. He briefly suggested that defendants might have committed fraud, but then indicated that he was only referring to an allegation in the Minnesota bankruptcy proceeding and stated that he made no finding as to fraud.

7

individually liable on a theory of contractual indemnification because it entered judgment against her as well as Ilya.

The motion court initially denied without prejudice plaintiffs' application for attorneys' fees but granted a later fee application. It entered judgment compelling defendants to pay $19,881 in fees, expenses and costs, in addition to the $22,500 awarded as compensatory damages, for a total of $42,381.

Defendants appealed the grant of plaintiffs' motion for summary judgment. With one judge dissenting, an Appellate Division panel affirmed the judgment of the motion court. The majority concluded that when the record is viewed in the light most favorable to defendants, Ilya's certification demonstrates nothing more than that Povolotsky was holding money owed to Ilya, and that Povolotsky was asked by Ilya to pay plaintiffs the amount owed by defendants to fulfill the terms of the Settlement Agreement. The Appellate Division majority concluded that, based on the Minnesota bankruptcy Trustee's claim, it appears that Povolotsky paid the checks using the assets of Auto Point. It held that the motion court properly exercised its discretion when it granted summary judgment and awarded attorneys' fees and costs.

The dissenting Appellate Division judge asserted that the majority construed the facts and drew inferences in the light most favorable to plaintiffs rather than in the light most

favorable to defendants, who were the non-moving parties. The dissenting judge criticized the majority's conclusion that the contested funds belonged to Auto Point as premised on nothing more than an untested allegation in the United States Bankruptcy Court's adversary proceeding. She concluded that, although defendants are potentially liable for breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, or common-law indemnification, the motion judge should have granted summary judgment in favor of defendants on two of plaintiffs' claims, dismissing the causes of action for breach of contract and contractual indemnification against Julia.[3]

Pursuant to Rule 2:2-1(a)(2), defendants filed a notice of appeal as of right based on the dissent in the Appellate Division.

## II.

Defendants argue that the Appellate Division majority misapplied the summary judgment standard, because it failed to view the record in the light most favorable to defendants and to draw inferences that supported defendants' arguments. They contend that they did not breach the Settlement Agreement,

---

[3] The dissenting Appellate Division judge did not address the motion court's award of attorneys' fees and costs; consequently, that award is not before the Court. R. 2:2-1(a)(2). Nevertheless, because plaintiffs were improperly granted summary judgment, they are not entitled to attorney's fees or costs.

9

because they provided certified funds in the proper amount in accordance with that Agreement, and plaintiffs accepted the two checks without questioning the origin of the funds. Defendants also contest the conclusion of the Appellate Division dissenting judge that they could be held liable for breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, or common-law indemnification.

Plaintiffs counter that the motion judge's entry of summary judgment was premised on the judge's unavoidable conclusion that defendants failed to provide "good funds," as the Settlement Agreement required. They argue that, in accordance with the parties' objective intent as manifested by the contract terms, the Settlement Agreement should be construed to require the payment of funds free of potential legal claims. Plaintiffs contend that the money transferred to them was fraudulently obtained or otherwise constituted "bad funds" because that money was subject to the adversary proceeding instituted by Auto Point's Chapter 7 Trustee. They urge the Court to affirm the Appellate Division's judgment.

III.

A.

We review the grant of summary judgment "in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing W.J.A. v. D.A., 210 N.J. 229, 237-38

10

(2012); <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 <u>N.J.</u> 320, 330 (2010)). That standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2(c).

The summary judgment rule set forth in <u>Rule</u> 4:46-2 "serve[s] two competing jurisprudential philosophies": first, "the desire to afford every litigant who has a <u>bona fide</u> cause of action or defense the opportunity to fully expose his case," and second, to guard "against groundless claims and frivolous defenses," thus saving the resources of the parties and the court. <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 541-42 (1995) (quoting <u>Robbins v. Jersey City</u>, 23 <u>N.J.</u> 229, 240-41 (1957)). In light of the important interests at stake when a party seeks summary judgment, the motion court must carefully evaluate the record in light of the governing law, and determine the facts in the light most favorable to the non-moving party. <u>R.</u> 4:46-2(c).

<u>Rule</u> 4:46-2(c)'s "genuine issue [of] material fact" standard mandates that the opposing party do more than "point[] to <u>any</u> fact in dispute" in order to defeat summary judgment. <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 529. Under that standard, once the

11

moving party presents sufficient evidence in support of the motion, the opposing party must "demonstrate by competent evidential material that a genuine issue of fact exists[.]" Robbins, supra, 23 N.J. at 241; see also Brill, supra, 142 N.J. at 529 (noting opposing party should "come forward with evidence that creates a 'genuine issue as to any material fact challenged'" (quoting R. 4:46-2)). As Justice Coleman noted in Brill, supra, if the party opposing the summary judgment motion

> offers . . . only facts which are immaterial or of an insubstantial nature, a mere scintilla, "fanciful, frivolous, gauzy or merely suspicious," he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact.
>
> [142 N.J. at 529 (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954)).]

A court deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, who "may pick and choose inferences from the evidence to the extent that 'a miscarriage of justice under the law' is not created." Id. at 536 (quoting R. 4:49-1(a)). Instead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party. R. 4:46-2(c); see also Durando v. Nutley Sun, 209 N.J. 235, 253 (2012) (noting "courts construe

12

the evidence in the light most favorable to the non-moving party in a summary judgment motion" (quoting Costello v. Ocean Cty. Observer, 136 N.J. 594, 615 (1994))); Brill, supra, 142 N.J. at 536 (explaining "[o]n a motion for summary judgment the court must grant all the favorable inferences to the non-movant").

The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case were tried. Bhagat, supra, 217 N.J. at 40; Davis v. Devereux Found., 209 N.J. 269, 286 (2012); see Davidson v. Slater, 189 N.J. 166, 187 (2007). Thus, "neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat, supra, 217 N.J. at 38; see, e.g., id. at 47-48 (reviewing grant of summary judgment in light of elements of valid and irrevocable gift and clear and convincing standard of proof); Durando, supra, 209 N.J. at 253-57 (applying clear and convincing evidentiary standard to grant of summary judgment in defamation action); Brill, supra, 142 N.J. at 542-45 (evaluating motion court's summary judgment determination in light of substantive standard and burden of proof governing cause of action of breach of duty owed by insurer to insured). With the factual record construed in accordance with Rule 4:46-2(c), "the court's task is to determine whether a rational factfinder could resolve the

13

alleged disputed issue in favor of the non-moving party[.]"
Perez v. Professionally Green, LLC, 215 N.J. 388, 405-06 (2013);
see also Bhagat, supra, 217 N.J. at 39 (noting when deciding
summary judgment motion, court determines whether reasonable
jury could rule in favor of non-moving party).

Accordingly, when the movant is the plaintiff, the motion
court must view the record with all legitimate inferences drawn
in the defendant's favor and decide whether a reasonable
factfinder could determine that the plaintiff has not met its
burden of proof.  See, e.g., Bhagat, supra, 217 N.J. at 38;
Durando, supra, 209 N.J. at 253; Brill, supra, 142 N.J. at 523.
If a reasonable factfinder could decide in the defendant's
favor, then the plaintiff has not demonstrated that it is
"entitled to a judgment or order as a matter of law" and the
court must deny the plaintiff's summary judgment motion.  R.
4:46-2(c); see, e.g., Bhagat, supra, 217 N.J. at 47-49
(reversing grant of summary judgment because genuine issues of
fact exist as to elements necessary to establish irrevocable
gift); Lyons v. Twp. of Wayne, 185 N.J. 426, 434-37 (2005)
(reversing grant of summary judgment because record was
inconclusive as to whether dispute exists regarding plaintiffs'
nuisance claim).

B.

14

We apply those settled principles to the trial court's grant of summary judgment in favor of plaintiffs on their breach of contract claim.

An agreement to settle litigation is "governed by [the general] principles of contract law." Brundage v. Estate of Carambio, 195 N.J. 575, 600-01 (2008) (quoting Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)). Our law imposes on a plaintiff the burden to prove four elements: first, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[s] did what the contract required [them] to do"; third, that "defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[s]." Model Jury Charge (Civil), § 4.10A "The Contract Claim -- Generally" (May 1998); see also Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985) (identifying essential elements for breach of contract claim as "a valid contract, defective performance by the defendant, and resulting damages"). Each element must be proven by a preponderance of the evidence. See Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) (citing State v. Seven Thousand Dollars, 136 N.J. 223, 238 (1994)). Under that standard, "a litigant must establish that a desired inference is more probable than not. If the evidence is in

15

equipoise, the burden has not been met."  Ibid. (quoting Biunno,

Current N.J. Rules of Evidence, comment 5a on N.J.R.E. 101(b)(1)

(2005)).

The initial task before the motion court was to determine

the parties' intent, which, in an appropriate setting, is "a

purely legal question that is particularly suitable for decision

on a motion for summary judgment."  Pressler & Verniero, Current

N.J. Court Rules, comment 5 on R. 4:46-2 (2016); see also

Khandelwal v. Zurich Ins. Co., 427 N.J. Super. 577, 585 (App.

Div.) (noting interpretation of contract "is generally

appropriate to resolve . . . on summary judgment"), certif.

denied, 212 N.J. 430 (2012).[4]  Here, the Settlement Agreement

required defendants to pay Globe "the amount of [$75,000], by

certified or attorney trust account check payable to [']The

Margolis Law Firm LLC, as attorneys for Globe Motor Company.'"

Neither party submitted extrinsic evidence of contractual

intent; the record before the court on that issue was limited to

the language of the Settlement Agreement's payment provision.

---

[4] Generally, if a contract is unambiguous, "then the words
presumably will reflect the parties' expectations." Kieffer v.
Best Buy, 205 N.J. 213, 223 (2011).  When the parties' intent
cannot be derived from a contract's plain text, however, our
jurisprudence "permit[s] a broad use of extrinsic evidence to
achieve the ultimate goal of discovering the intent of
the parties" and thus, "[e]xtrinsic evidence may be used to
uncover the true meaning of contractual terms." Conway v. 287
Corp. Ctr. Assocs., 187 N.J. 259, 270 (2006); see also
Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014).

16

The parties sharply disputed the meaning of that language. Plaintiffs argued that the contract required the payment of funds that were owned by defendants and that would not be subject to claims in the future. Defendants countered that the Settlement Agreement required only that they provide the funds to plaintiffs, by certified or attorney trust account check made payable to Margolis as Globe's counsel. In resolving that question, the motion court's task was "not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer, supra, 205 N.J. at 223. Instead, the court was charged to determine "the intention of the parties to the contract as revealed by the language used [by them.]" Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 339 (App. Div.), certif. denied, 188 N.J. 353 (2006); see also Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) ("[I]t is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties.").

The motion court never adopted either party's construction of the Settlement Agreement's payment term or stated its own conclusion as to the meaning of that provision. Its only finding on that issue was that "[t]he objective intent was to receive $75,000." Although the court questioned why plaintiffs did not insist on language in the Settlement Agreement requiring

17

defendants to hold plaintiffs harmless in the event of a claim against the settlement funds, it also stated that a plaintiff who settles a case has the right to expect that the settlement funds will not be challenged two years after the matter is resolved. Thus, the motion court premised a grant of summary judgment on a breach of contract claim without clearly construing the critical term.

Notwithstanding the unresolved meaning of the Settlement Agreement's payment term, the motion court concluded, as a matter of law, that plaintiffs established a breach of the Settlement Agreement. To properly make such a determination, the court was required to view the record with all legitimate inferences drawn in defendants' favor, and to determine if there was no genuine issue of material fact. See R. 4:46-2(c); see also Durando, supra, 209 N.J. at 253; Brill, supra, 142 N.J. at 536. At a minimum, that conclusion required competent evidence substantiating plaintiffs' allegation that the funds in question belonged to Auto Point.

Plaintiffs did not submit evidence demonstrating that defendants' $75,000 payment was made using funds that were owned by Auto Point. They contended, instead, that because the bankruptcy Trustee filed an adversary proceeding seeking the return of the settlement funds, and plaintiffs paid $22,500 to settle that proceeding, defendants breached the Settlement

18

Agreement. The certification that they submitted to the motion court, summarizing the Minnesota adversary proceeding and their settlement of the Trustee's claim, demonstrated only that the Trustee had asserted that the funds belonged to Auto Point's bankruptcy estate. Plaintiffs submitted no certification, financial records, or other competent proof to demonstrate that the funds were Auto Point's.

Defendants relied solely on Ilya's certification, which reiterated defendants' claim that Povolotsky was "holding" money owed to Ilya "from prior dealings," and that the funds in question belonged to Ilya, not to Auto Point. That certification was also inconclusive; it did not document the origin of the money or substantiate defendants' representations that the funds belonged to Ilya.[5]

The record did not adequately support the motion court's conclusion that defendants breached the payment terms of the Settlement Agreement and that plaintiffs were entitled to summary judgment on their breach of contract claim. When all legitimate inferences are drawn in defendants' favor, the record presents a genuine issue of material fact on a critical question: whether the settlement funds were Auto Point's, as

---

[5] The motion judge commented that he did not believe Ilya's "insulting self-serving statement" in his certification that the $75,000 paid to settle the parties' litigation was his money, in the custody of Povolotsky.

19

the Trustee alleged, or were owned by Povolotsky and owed to Ilya based on prior transactions. To be sure, the Trustee may have been entitled to a remedy under 11 U.S.C.A. §§ 544 and 548, and plaintiffs' decision to settle the Trustee's adversary proceeding for thirty percent of the amount claimed, rather than devote resources to the litigation of that action, may represent sound legal strategy. Because of that settlement, however, the crucial evidence was never presented to the United States Bankruptcy Court, and that court never determined that the disputed funds were in fact assets of Auto Point's bankruptcy estate. Before the motion court, plaintiffs demonstrated nothing more than that the Trustee filed a complaint, and that the Trustee's claim was settled. In short, the critical factual question was left undecided by the summary judgment record.

Accordingly, defendants raised a genuine issue of material fact with respect to the breach of contract claim. A reasonable factfinder considering the evidence set forth in the record, with all legitimate inferences drawn in defendants' favor, could find that plaintiffs did not prove by a preponderance of the evidence that defendants breached the payment obligations imposed by the Settlement Agreement. Plaintiffs were not entitled to judgment as a matter of law on their breach of contract claim.

Notwithstanding our ruling that the motion judge's grant of summary judgment constituted error, we do not concur with the dissenting judge's view that plaintiffs' breach of contract claim and contractual indemnification claim against Julia should have been dismissed on summary judgment. On remand, the parties will have the opportunity to develop a factual record regarding all of the claims asserted in this case and to file motions for summary judgment based on that record.

## IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA and SOLOMON; and JUDGE CUFF (temporarily assigned), join in JUSTICE PATTERSON's opinion.