**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5386-18

SUSAN PATIKOWSKI,

    Plaintiff-Appellant,

v.

ST. PETER'S UNIVERSITY
HOSPITAL,

    Defendant-Respondent.

_____

Submitted February 3, 2021 – Decided March 3, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3214-17.

The Marchese Law Firm, LLC, attorneys for appellant (Daniel G.P. Marchese, of counsel and on the brief).

Norris McLaughlin, PA, attorneys for respondent (Patrick T. Collins, on the brief).

PER CURIAM

Plaintiff Susan Patikowski appeals from the Law Division's August 29, 2019 order granting summary judgment in favor of defendant St. Peter's University Hospital and dismissing her complaint for failing to establish a prima facie case under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49. We affirm.

I.

We derive the following facts from the summary judgment motion record viewed in the light most favorable to plaintiff. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Plaintiff, a registered nurse, age forty-nine at the time, was working as the charge nurse in defendant's emergency room on May 28, 2015. That evening, a highly intoxicated woman with a history of mental health issues, Amber,[1] was placed in a room with a patient, Betty, who was awaiting a psychological examination. The two patients began arguing and left their beds—Amber was loudly cursing and agitating Betty.

---

[1] We use fictitious names because the names of the patients are not included in the record.

Video surveillance footage[2] shows Betty attempted to leave the vicinity; a security guard intervened and returned Betty to her room. Amber was sitting on the floor and being tended to by two nurses. When Betty was returned to her room, plaintiff turned her attention to Amber.

The surveillance footage shows plaintiff speaking to Amber and the other nurses. Plaintiff leaned over Amber as she looked away from plaintiff. Amber then turned her head toward plaintiff. According to plaintiff, Amber swung her arm up and struck plaintiff, although this is not visible in the video. Plaintiff's intention was to restrain Amber's arms so "she could not spit on or bite [her]." This version of events was corroborated by a fellow nurse, who recalled hearing a slap and plaintiff shouting, "Don't you ever hit a nurse."

Plaintiff feared for her safety and placed her hands around Amber's neck in order to subdue her and "safely bring the intoxicated patient to the ground to prevent her from getting up to attack" plaintiff and others. Amber kicked plaintiff, who fell on her back. Another nurse and six security guards responded and returned Amber to her room.

---

[2] The video surveillance footage does not include audio.

A-5386-18

Zamima Solano-Sepulveda, a patient care technician who was present during the incident, was interviewed by defendant's representatives as part of its investigation. Her version of events was recorded as follows:

> Zamima was asked to discuss her accounting of what transpired on 5/28/2015 in Pod B when her patient [Amber] was having behavioral issues. Zamima shared her patient put herself on the floor and was saying "[d]on't touch me" and crying. [Plaintiff] came over and was asking her to get off the floor and return to her stretcher. The patient was not following instructions and continued to cry and ask staff to not touch her. [Plaintiff] then "grabbed her by the neck." "I don't feel that is the right way to do it, the patient tried to defend herself and pushed [plaintiff] away." "I don't think that was right . . . ."

Andrew Rollins, a registered nurse who witnessed the incident, gave a statement indicating that during the altercation between plaintiff and Amber, "[p]laintiff's right-thumb was clearly under the patient['s] jaw near the throat."

On June 1, 2015, plaintiff met with her direct supervisor, Ruby Ymbong, and the director of the emergency room department, Heather Veltre. Plaintiff told Ymbong and Veltre that Amber "hit [her] in the face before [she] took her down," and plaintiff denied grabbing Amber by her neck. At the meeting, Ymbong and Veltre informed plaintiff she was being suspended for choking Amber. On June 3, 2015, plaintiff was terminated. On a "Notice of Constructive Performance Feedback," Ymbong wrote:

4

ON 5/28/15 YOU WERE NOTED TO HAVE BROUGHT DOWN [AMBER] USING UNNECESSARY ACTIONS AND FORCE. YOU HAD YOUR HANDS AROUND [AMBER'S] THROAT AND PUSHED HER ON THE GROUND WHEN [AMBER] WAS NOT EXHIBITING PHYSICAL AGGRESSION AT THAT TIME. THIS INCIDENT WAS CAPTURED ON SURVEILLANCE CAMERA AND WITNESSED BY A CO-WORKER.

The same day, plaintiff internally appealed her termination in the form of a letter to Linda Carroll, the Vice President of Patient Care Services and chief nursing officer at the hospital. In the letter, plaintiff claimed she "attempt[ed] a takedown" of Amber because she had either hit plaintiff or made a violent gesture. Plaintiff conceded the video did not depict any violent behavior by Amber, although she noted the camera's view of Amber was obstructed. Plaintiff expressed she had worked at the hospital for twelve years "without any previous incidents," denied being a violent person, and disavowed any intent to harm Amber. Plaintiff wrote watching the video "made [her] sick to [her] stomach."

In a June 5, 2015 letter, Carroll upheld Ymbong's decision, which was reached after conducting an investigation and reviewing the video. Carroll determined plaintiff's conduct violated defendant's policies for restraining patients and workplace violence. Plaintiff could have appealed the decision

5

further to the president of the hospital but did not.  According to plaintiff, she was never advised that she could appeal the decision further.

On that same date, Carroll reported the May 28, 2015 incident to the New Jersey Board of Nursing (State Board) as "professional misconduct which relates adversely to patient care or safety."  Describing plaintiff's conduct, Carroll wrote:

> [Plaintiff] was captured on video surveillance while physically securing an agitated patient that was outside of hospital protocol.  She placed her hands around the throat of this patient and pushed her down to the floor.  The patient's body was in a submissive position and she did not initiate physical contact prior to [plaintiff] placing her hands around her throat and pushing her to the floor.

The State Board declined to formally discipline plaintiff but in a September 28, 2015 letter, required plaintiff to complete a course on dealing with difficult patients, which plaintiff consented to.

Justin Neidig, whom plaintiff had supervised, temporarily assumed her responsibilities the day after she was terminated.  Defendant considered two internal candidates to assume plaintiff's role.  Ymbong, Veltre, and four others interviewed Neidig on July 7, 2015.  In her notes on Neidig's candidacy, Ymbong wrote:  "STRONG CLINICAL EXPERIENCE.  GREAT PRECEPTOR

6

[AND] WORKS WELL WHENEVER IN CHARGE." Ymbong recommended promoting Neidig, and on July 19, 2015, he was promoted to plaintiff's position.

Plaintiff contended Neidig is eighteen years younger than her, based solely on her sworn statements and deposition testimony, and not on empirical proof. She also contended Neidig was paid significantly less than she was, again based solely on her deposition testimony. No other proof was submitted by plaintiff to substantiate this claim.

On May 28, 2017, plaintiff filed a complaint in the Law Division against defendant alleging: (1) wrongful termination pursuant to implied contract in bad faith (count one); (2) breach of the covenant of good faith and fair dealing (count two); and (3) age discrimination under the NJLAD. Defendant filed its answer on July 12, 2017. Plaintiff contended she was terminated because she did not get along with a physician who had previously worked for defendant and was re-hired as the head of the Emergency Department several weeks following her termination.

On August 18, 2017, defendant moved for summary judgment for the first time, seeking to dismiss plaintiff's complaint in its entirety. On September 29, 2017, a prior judge granted partial summary judgment to defendant, dismissing counts one and two of plaintiff's complaint, with prejudice. The record does not

A-5386-18

include the judge's reasoning for dismissing counts one and two. Plaintiff has not appealed from the September 29, 2017 order.[3]

Following a period of discovery and after the initial discovery end date had passed, defendant moved a second time for summary judgment on October 31, 2018. On December 4, 2018, plaintiff moved a second time to extend the discovery end date for an additional ninety days. On December 21, 2018, the motion judge granted plaintiff's motion and extended discovery to April 30, 2019, citing plaintiff's counsel's health issues since May 2018, despite it being "clear that plaintiff[] . . . did not, to say the least, aggressively litigate this case." On the same date, the judge denied defendant's motion for summary judgment, without prejudice, to allow plaintiff additional time to complete discovery.

On April 11, 2019, defendant filed its third summary judgment motion, which was opposed by plaintiff. On May 10, 2019, the judge conducted oral argument on defendant's motion. During the hearing, the judge reviewed the surveillance video. Counsel debated how obvious it was from the footage that plaintiff placed her hands on Amber's throat and whether the video depicted Amber striking plaintiff.

---

[3] This is reflected by the notice of appeal, which states plaintiff is appealing an order entered on May 30, 2019. The notice of appeal is not included in plaintiff's appendix. R. 2:6-1(a)(1)(F).

Defendant argued whether plaintiff actually touched Amber improperly was irrelevant, because it only needed to genuinely believe plaintiff acted inappropriately in order to proffer a legitimate, non-discriminatory reason for plaintiff's termination. Defendant further argued there was no evidence of any discriminatory intent on its part.

Plaintiff argued defendant's motion was premature because discovery was outstanding. In particular, plaintiff contended discovery pertaining to defendant's guidelines for takedowns of patients was not provided.[4] Plaintiff repeatedly maintained that Carroll could not explain any workplace policy violation at her deposition. And, plaintiff could not explain how violation of a workplace policy pertained to her discrimination claim. When asked what facts plaintiff had in support of her discrimination claim, plaintiff's counsel only iterated the fact that Neidig replaced plaintiff. When pressed if he had more facts, plaintiff's counsel replied, "No, that's it." Plaintiff simply contended there was a genuine issue of material fact regarding the contents of the surveillance video.

---

[4] The motion judge noted plaintiff did not file a motion to compel discovery of such guidelines. Additionally, plaintiff did not retain an expert.

A-5386-18

The motion judge reserved his decision. In a comprehensive twenty-one-page statement of reasons, the motion judge granted defendant's motion for summary judgment. As a preliminary matter, the motion judge determined defendant's motion was not premature. Rule 4:46-1 requires "[a]ll motions for summary judgment shall be returnable no later than 30 days before the scheduled trial date." Had defendant waited longer to move for summary judgment, defendant's motion would have been untimely:

> Trial is set for June 17, 2019. Had [defendant] waited until the discovery period expired to file this application, the motion would have, at the earliest, been returnable on June 7, 2019 – just [ten] days before the trial date. Based on Rule 4:46-1, the motion would likely have been denied as untimely.

In reaching his decision, the motion judge noted the surveillance video did not depict Amber hitting plaintiff but did show plaintiff placing her hands around Amber's throat. The judge noted:

> In [the video], [Amber] was sitting on the ground as [plaintiff] approached. Initially, [plaintiff] stood in front of [Amber], but she then moved to [Amber]'s side. Because of the camera angle, [plaintiff]'s body covers part of [Amber]. Based on the [c]ourt's review of the video, [Amber] did not try to hit [plaintiff]. [Plaintiff] claims the contrary, and argues that the camera angle masks what occurred because her own body is in the way. However, she acknowledged at her deposition that while she "honestly had thought [Amber] hit me first, the video didn't show this."

A-5386-18

> The video continues with [plaintiff] placing her hands around what appears to be [Amber]'s neck and bringing her to the ground. As is evident in the still images from the video, [Amber] has the facial expression of someone being choked, and even places her hand just below [plaintiff]'s as if attempting to remove [plaintiff] 's hand from her neck.

The motion judge found defendant's stated reason for plaintiff's termination was its policy against workplace violence.

In addressing plaintiff's internal appeal to Carroll, the motion judge noted, "Absent from her letter was <u>any</u> mention of age discrimination or the contention that age played any role in her termination." The motion judge further noted plaintiff, in responding to the State Board's investigation into her behavior, "did not argue . . . she was fired because of her age."

Regarding Neidig, the motion judge concluded: "None of the documents submitted to the [c]ourt provided competent proof of Neidig's age or salary. Neidig was not deposed. Instead, the [c]ourt is asked to rely solely on [plaintiff]'s testimony that Neidig was in his 'early thirties,' and her certification that he was [thirty-one] years old." Additionally, the motion judge observed Neidig's presumably younger age was the only basis for plaintiff's discrimination claim, and her belief that she was terminated because of the re-hiring of a physician she did not get along with.

11

The motion judge also determined plaintiff failed to establish a prima facie case of age discrimination under the NJLAD:

> [Plaintiff] bears the burden of demonstrating that she was fired because of her age. At oral argument, [plaintiff] unequivocally stated that the only support for that claim is that after [plaintiff] was fired, [defendant] hired Neidig who was younger than [plaintiff]. Thus, the issue becomes, is that, alone, enough to establish a valid [NJ]LAD claim.
>
> Key to the [c]ourt's analysis is the Appellate Division's opinion in Young.[5] To reiterate, the [c]ourt's focus in age discrimination cases is not merely the age of the "replacement" employee, rather "whether the claimant's age, in any significant way, made any difference in the treatment he was accorded by his employer." Young, 385 N.J. Super. at 459. To that end, the Appellate [Division] has also held that "it is erroneous in an ordinary case of age discrimination in employment, to use reference to a particular replacement employee as the only means for satisfying" the prima facie showing. Petrusky [v. Maxfli Dunlop Sports Corp.], 342 N.J. Super. [77,] 82 [(App. Div. 2001)].
>
> Here, [plaintiff] offers no explanation of how age played <u>any</u> role in her termination. Even when [plaintiff] appealed [defendant]'s decision to terminate her, or during her proceeding before the [State Board], she made no mention that he was treated unfairly because of her age.
>
> Indeed, Carroll, who frequently described the video as "disturbing," relied heavily, if not entirely, on

---

[5] <u>Young v. Hobart West Grp.</u>, 385 N.J. Super. 448 (App. Div. 2005).

the [i]ncident as her basis for terminating [plaintiff]. Neidig was not deposed, and [plaintiff] offered no evidence to demonstrate that he was treated favorably because of his age. In fact, . . . nothing in the record, beyond hearsay from [plaintiff], proves that Neidig is even younger than [plaintiff].

Therefore, the motion judge concluded, "no genuine issue of material fact as to whether age made any difference in [plaintiff]'s termination" existed.

The motion judge then determined defendant had a sufficient basis to terminate plaintiff pursuant to its policy against workplace violence:

It cannot be seriously disputed that in the course of taking [Amber] to the ground, [plaintiff]'s hands were around [Amber]'s throat. The video clearly shows that. . . . Carroll, who spent hours reviewing the video, arrived at the same conclusion. So too did the [c]ourt.

In this case, still images (and a video) are worth a thousand words. There are no material facts in dispute that need be submitted to a jury. Indeed, [plaintiff]'s use of what [defendant] believed was unnecessary force constitutes a legitimate reason to fire her.

The motion judge observed plaintiff failed to offer any evidence to suggest defendant's stated reason for her termination was pretextual, and additionally, any issues in respect of the re-hired physician were unrelated to her NJLAD claim. A memorializing order was entered May 30, 2019. This appeal followed.

13

## II.

On appeal, plaintiff contends the motion judge inappropriately decided a material fact at issue and usurped the role of the jury by granting summary judgment to defendant. Plaintiff also argues the judge failed to acknowledge her testimony regarding age discrimination under the NJLAD. We do not find these arguments persuasive and affirm substantially for the reasons set forth in the motion judge's thoughtful written opinion. We add the following comments.

We review a summary judgment decision de novo, under the same standard that governs the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995). If no issue of fact exists, an appellate court "affords no special deference to the legal determinations of the trial court." RSI Bank, 234 N.J. at 472 (quoting Templo Fuente, 224 N.J. at 199).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to <u>any</u> fact in dispute." <u>Brill</u>, 142 N.J. at 529. Instead, the opposing party must "demonstrate by competent evidential material that a genuine issue of fact exists[.]" <u>Igdalev</u>, 225 N.J. at 479-80 (alteration in original) (quoting <u>Robbins v. Jersey City</u>, 23 N.J. 229, 240-41 (1957)). The court must then consider whether that party's proposed evidence, "when viewed in the light most favorable to the non-moving party, [is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill</u>, 142 N.J. at 540.

It remains "the unqualified affirmative burden of [the non-moving] part[y] to make a complete and comprehensive showing why summary judgment should not be entered . . . ." <u>Lombardi v. Masso</u>, 207 N.J. 517, 556 (2011) (Rivera-Soto, J., dissenting). Bare conclusions, without factual support, will not defeat summary judgment. <u>Brae Asset Fund, L.P. v. Newman</u>, 327 N.J. Super. 129, 134 (App. Div. 1999).

According to the NJLAD:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . age . . . of any individual . . . to discharge . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

15

[N.J.S.A. 10:5-12(a).]

"In a case alleging age discrimination under the [NJ]LAD, an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Bergen Com. Bank v. Sisler, 157 N.J. 188, 207 (1999) (alterations in original) (quoting Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 344 (App. Div. 1997)).

"The evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action.'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (quoting Marzano v. Comput. Sci. Corp. Inc., 91 F.3d 497, 508 (3d Cir. 1996)).

For summary judgment purposes, a plaintiff satisfies this element "so long as the employee shows that he has been performing in the position." Id. at 441; Grande v. Saint Clare's Health Sys., 230 N.J. 1, 18 (2017). In addressing how courts should evaluate this requirement of the prima facie case, our Supreme Court has stated that

> only the plaintiff's evidence should be considered. That evidence can come from records documenting the plaintiff's longevity in the position at issue or from

testimony from the plaintiff or others . . . . Because performance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test, they do not come into play as part of the second prong of the prima facie case. Thus, even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position . . . the slight burden of the second prong is satisfied.

[Zive, 182 N.J. at 455 (citation omitted).]

The NJLAD does not define "adverse employment action." See N.J.S.A. 10:5-5. "The proofs necessary to demonstrate an 'adverse employment action' must be examined on a case-by-case basis." Victor v. State, 401 N.J. Super. 596, 615 (App. Div. 2008), aff'd as modified by 203 N.J. 383 (2010). Adverse employment actions include "actions that affect wages, benefits, or result in direct economic harm." Id. at 616. A noneconomic action will also qualify as an adverse employment action when it "cause[s] a significant, non-temporary adverse change in employment status of the terms and conditions of employment." Ibid. However, "an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction." Ibid.

New Jersey courts utilize the framework established in <u>McDonell Douglas</u>;[6] <u>Viscik v. Fowler Equip. Co.</u>, 173 N.J. 1, 13-14 (2002); <u>Crisitello v. St. Theresa Sch.</u>, 465 N.J. Super. 223, 227 (App. Div. 2020). First:

> a plaintiff must first prove a prima facie case of discrimination. To do so, a plaintiff must show that he or she (1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person. The establishment of a prima facie case gives rise to a presumption of discrimination.
>
> [<u>Viscik</u>, 173 N.J. at 14 (citation omitted).]

The second prong connotes the "employer's legitimate expectations" for an employee's performance. <u>Zive</u>, 182 N.J. at 454. In the context of age discrimination, "the fourth element . . . require[s] a showing that the plaintiff was replaced with a candidate sufficiently younger to permit an inference of age discrimination." <u>Young</u>, 385 N.J. Super. at 459 (alteration in original) (quoting <u>Sisler</u>, 157 N.J. at 213). However, it is insufficient for the replacement to merely be younger; "[t]he focal question is . . . whether the claimant's age, in any significant way, 'made a difference' in the treatment he was accorded by his employer." <u>Ibid.</u> (quoting <u>Petrusky</u>, 342 N.J. Super. at 82).

---

[6] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1972).

If a plaintiff demonstrates a prima facie case of age discrimination, the burden of production shifts to the employer, who must "articulate a legitimate, non-discriminatory reason for the adverse employment action." Viscik, 173 N.J. at 14. If an employer articulates a legitimate reason for its adverse employment action, the burden then shifts back to the plaintiff, who must "show that the employer's proffered reason was merely a pretext for discrimination." Ibid. "To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." Ibid.

With respect to plaintiff's prima facie case of age discrimination, the parties agree plaintiff, who was forty-nine when terminated, belongs to a protected class. However, defendant disputes the second element, contending plaintiff did not perform her job according to its standards. There is no dispute as to the third element, whether plaintiff was terminated from her position. With respect to the fourth element, the motion judge determined plaintiff failed to prove she was replaced by a sufficiently younger applicant or that age played a factor in how she was treated differently from Neidig. Moreover, plaintiff replied, "No, that's it," when asked at her deposition whether any evidence of discrimination existed beyond her purported age difference with Neidig.

Even if plaintiff established a prima facie case of age discrimination, defendant articulated a legitimate, non-discriminatory reason for her termination—the May 28, 2015 incident. After thoroughly reviewing the record, we are satisfied that defendant's decision to terminate plaintiff was based on legitimate criteria. Therefore, summary judgment on plaintiff's age discrimination claim was properly granted.

III.

Next, plaintiff contends the question of whether she inappropriately placed her hands on Amber's neck should have been left for the jury to determine. Again, we disagree.

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Igdalev, 225 N.J. at 479 (alterations in original) (quoting Brill, 142 N.J. at 529). "[F]acts which are immaterial or of an insubstantial nature, a mere scintilla, 'fanciful, frivolous, gauzy or merely suspicious,'" are insufficient to create a genuine issue of material fact. Id. at 480 (quoting Brill, 142 N.J. at 529). Here, plaintiff asserts the video footage is unclear as to what happened and thus, creates a genuine issue of material fact. She also contends her strained relationship with the re-hired physician somehow played a role in

20

her termination but never explains how that relationship relates to her age discrimination claim.

"[T]he opposing party must demonstrate by competent evidential material that a genuine issue of fact exists[.]" Igdalev, 225 N.J. at 480 (second alteration in original) (quoting Robbins, 23 N.J. at 240-41). "If a motion is based on facts not appearing of record, or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify . . . ." R. 1:6-6. "Personal knowledge, the mandate of the rule, clearly excludes facts based merely on 'information and belief.'" Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6-6 (2021).

Plaintiff's mere speculation as to why she was terminated does not constitute personal knowledge. Therefore, we conclude that plaintiff's sworn statements and deposition testimony setting forth her personal beliefs do not qualify as "competent evidence" that may create genuine issues of material fact precluding the grant of summary judgment to defendant. Having considered plaintiff's remaining argument that summary judgment was improvidently granted in the face of outstanding discovery, in light of the record and applicable law, we conclude it is without merit and does not warrant discussion in a written

opinion.  <u>R.</u> 2:11-3(e)(1)(E).  Plaintiff failed to demonstrate a prima facie case

of age discrimination and summary judgment was properly granted to defendant.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5386-18