**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0758-15T3

FRANK CARABALLO,

    Plaintiff-Appellant,

v.

CITY OF JERSEY CITY POLICE
DEPARTMENT, a municipal entity,
and THOMAS COMEY, individually
and in his representative capacity,

    Defendants-Respondents.

_____

        Argued October 3, 2017 — Decided November 8, 2017

        Before Judges Carroll and Mawla.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Docket No. L-
        0995-13.

        Brian F. Curley argued the cause for
        appellant.

        Scott W. Carbone, Assistant Corporation
        Counsel, argued the cause for respondents
        (Jeremy Farrell, Corporation Counsel,
        attorney; Mr. Carbone, on the brief).

PER CURIAM

Plaintiff Frank Caraballo appeals from an August 28, 2015 order granting defendant Jersey City Police Department (JCPD) summary judgment dismissing plaintiff's employment discrimination complaint. We reverse.

The following facts are taken from the record. Plaintiff joined the JCPD in 1973. On August 13, 1999, while on duty, plaintiff was involved in a serious auto accident caused by the failure of the brakes on the city vehicle he was operating. As a result of the accident, plaintiff sustained several injuries including herniated discs, broken surgical pins, temporary paralysis, a neurological injury, and a torn meniscus.

In 2001, plaintiff filed a workers' compensation claim against Jersey City regarding his injuries. The claim was settled in 2013. From 2001 until 2006, plaintiff's employment status with JCPD fluctuated between paid sick leave, light duty, and full duty.

In 2006, a city-appointed orthopedic physician, Dr. Juluru Rao, recommended physical therapy and indicated in his report "anthroscopy may buy [plaintiff] relief for a very short period of time . . . [but then plaintiff] may need total knee replacement." Thereafter, plaintiff was sent to another physician, Dr. Leonard Jaffe, for another opinion. Dr. Jaffe concluded plaintiff "would not recover without significant

surgery, namely total knee replacements[.]"  The recommendation that plaintiff receive knee surgery was documented in connection with plaintiff's workers compensation claim in December 2006 by Dr. Edward Boylan who wrote in a Case Progress Report "AWAITING B/L KNEE REPLACEMENT."  This pattern continued whereby plaintiff was sent to Dr. Rao on April 17, 2007, and January 15, 2008, and Dr. Jaffe on July 7, 2009, and January 10, 2011.

The final evaluation by Dr. Jaffe on January 10, 2011, was requested by Jersey City's risk management department in order to evaluate plaintiff's knees and comment on his fitness for duty. After receiving the evaluation, defendant advised plaintiff that he should retire by March 1, 2011 or JCPD would apply on plaintiff's behalf for a New Jersey Police and Firemen's Retirement System (PFRS) disability retirement.[1]

A meeting between plaintiff, his union representative, and Jersey City Chief of Police Thomas Comey was held on February 28, 2011, to discuss plaintiff's retirement.  Following the meeting, plaintiff's union representative informed Comey that he would be retiring "under protest."  Plaintiff retired March 11, 2011.

---

[1] Plaintiff submitted an application for retirement to PFRS on August 24, 2010, with a requested effective date of September 1, 2010.  Plaintiff then changed the effective date to November 1, 2010, and ultimately March 1, 2011.

A-0758-15T3

Plaintiff filed a complaint in the Law Division on February 28, 2013, against the JCPD and Comey. Plaintiff's complaint asserted a cause of action under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49 and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. After discovery ended, defendants moved for summary judgment. Subsequently, plaintiff withdrew his claims against Comey individually and the CRA claim, leaving only the accommodation based LAD claim against the JCPD.

On August 31, 2015, the motion judge placed an oral opinion on the record. The motion judge adjudicated the LAD and the CRA claims, even though the latter had been withdrawn by plaintiff. The judge made several findings of fact that were disputed by the parties. The judge found plaintiff refused surgery and had never asked for it. Relying on disputed medical reports, the motion judge concluded plaintiff's accommodation claim failed because he could not perform the essential job functions of a police officer. The judge found plaintiff had no viable LAD claim because he had failed to enforce his right to have the surgery in the workers' compensation court even though the JCPD did not contest plaintiff's right to the surgery. Plaintiff now appeals the motion judge's entry of summary judgment.

A-0758-15T3

We review the grant of summary judgment by a trial court de novo. <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 <u>N.J.</u> 189, 199 (2016). We apply the same principles governing an adjudication of a motion for summary judgment as the trial court. <u>Atl. Mut. Ins. Co. v. Hillside Bottling Co., Inc.</u>, 387 <u>N.J. Super.</u> 224, 230 (App. Div.), <u>certif. denied</u>, 189 <u>N.J.</u> 104 (2006). <u>Rule</u> 4:46-2(c) states an order granting summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." A fact is material if it is substantial in nature. <u>See</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 529 (1995).

"A court deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, who 'may pick and choose inferences from the evidence to the extent that "a miscarriage of justice under the law" is not created.'" <u>Globe Motor Co. v. Iqdalev</u>, 225 <u>N.J.</u> 469, 480 (2016) (quoting <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 536). Rather, in reviewing summary judgment orders, the court must look at the facts in a light most favorable to the non-moving party and determine whether

a genuine issue of material fact exists sufficient to be tried. See Brill, supra, 142 N.J. at 523.

Plaintiff argues the motion judge erred granting summary judgment by making "a plethora of findings of fact on genuinely disputed issues of fact." Specifically, plaintiff argues the motion judge erred by: (1) misstating the timeline and mischaracterizing the nature of plaintiff's injuries; (2) stating plaintiff refused knee surgery "due to family problems"; and (3) concluding summary judgment was appropriate since plaintiff refused the alleged reasonable accommodation. We agree.

The motion judge concluded plaintiff refused to undergo knee surgery by relying on materially disputed facts. The judge said "[d]espite recommendations from several doctors, plaintiff did not undergo surgery to his right knee due to family problems." The judge also concluded plaintiff did not ask for the surgery. Relying on Comey's deposition testimony, the judge found:

> Accordingly, Comey testified that [] had plaintiff ask[ed] him to authorize the knee replacement surgery, he would have contacted [Lt.] McLellan [the Commander of the JCPD Medical Bureau] and would have done so. . . . After plaintiff was informed by Lt. McLellan that he was unfit for duty, Comey asserted the plaintiff refused to see a knee replacement specialist.

The motion judge's conclusions are refuted by the record. Specifically, the finding that plaintiff refused the surgery is

contradicted by a July 17, 2006 letter from plaintiff's counsel to the Jersey City Law Department stating plaintiff had recently seen Dr. Rau and Dr. Jaffe and was informed he was a candidate for total knee replacement surgery.  The letter states in pertinent part "Kindly have risk management authorize the aqua therapy and the surgery recommended by both Dr. Rau and Dr. Jaffe."

Nearly two years later on April 9, 2008, plaintiff's counsel wrote the Jersey City Law Department stating "My client who does wish to have the knee replacement(s) wants to have the surgery done by Dr. Hartspan (specialist in knee replacement)."  The letter concludes:  "I would ask that you confirm Mr. Soriero's[2] authorization with him and provide me with written authorization, which I can give to Dr. Hartspan."

On December 18, 2008, plaintiff's counsel again corresponded with the Jersey City Law Department quoting Dr. Jaffe's April 17, 2006 report, which stated plaintiff will not recover without a total knee replacement.  The letter ends "it seems that all we need is authorization for the surgery."  Thus, whether plaintiff refused surgery or requested it is a materially disputed fact.

Additionally, the record also contains deposition testimony from Soriero, that defendant failed to follow up approving

---

[2]  Peter Soriero was the JCPD risk management department representative.

A-0758-15T3

plaintiff's knee surgery, and that plaintiff had not refused the surgery. Soriero testified as follows:

> [Q.]: Do you recall any communications from Ms. Murphy in the law department or anybody in the law department forwarding the request — I would call it a demand — that the knee replacement surgery be approved?
>
> [Soriero]: I do not recall this, no, I don't.
>
> [Q.]: Well, in a context like this where at that time Mr. Caraballo has been diagnosed by the two city-approved and appointed orthopedic experts that he needed the knee replacement surgery, are you saying that it was perfectly feasible that it would have just fallen into some hole where the doctor did not make the proper request and therefore the risk management department did not grant approval?
>
> [Soriero]: It's very possible. As I explained before, our operations are somewhat informal. It's not like an insurance company. We're somewhat informal, so it's a possibility that that could have happened, yes.

Soriero also testified:

> [Q.]: We're going to see numerous more requests from 1999 to 2011, twelve years, five of which we can document recommendations from the city doctors to have knee replacements. At some point doesn't somebody wake up to the idea that, Okay, let's get it done, and if it's a paperwork problem . . . [then] let's go tell them they need to give us a specific where and when so we can get this done because we have an officer in distress? . . . I mean, at some point shouldn't that light bulb go off?
>
> [Soriero]: Yes, it should have.

A-0758-15T3

> [Q.]: Because you're speaking for the city on this particular point, is it the city's position that the surgery did not occur because Mr. Caraballo refused to have it, the knee replacement surgery?
>
> [Soriero]: Not to my knowledge he refused it, no.

This testimony was not addressed by the motion judge and demonstrates a material dispute of fact. Summary judgment was inappropriate under these circumstances.

Although the motion judge did rely on Comey's deposition testimony to draw the conclusion plaintiff did not request the surgery, the judge ignored the portions of Comey's testimony that contradicted the statements relied upon to grant summary judgment. Specifically, Comey testified although plaintiff may have expressed reservations about surgery, he did not refuse it.

> [Q.]: In other words, [] was [plaintiff] refusing to have [the surgery]?
>
> [Comey]: Not that he was refusing. Not refusing. Hesitations or reservation. Having surgery was his own personal choice.
>
> . . . .
>
> [Q.]: You don't recall him ever expressing — saying he didn't want to have the surgery, correct?
>
> [Comey]: No, sir.
>
> . . . .

A-0758-15T3

> [Q.]: And he never made any expression to you saying, "I do not want to have knee surgery." He never said anything like that to you, correct?
>
> [Comey]: To the best of my recollection, no, sir.

Additionally, Comey testified that he could not recall whether plaintiff had been approved to have the surgery by risk management.

Comey's testimony demonstrates the existence of material factual disputes. "[A]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion . . . would require submission of the issue to the trier of fact." Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 366 (App. Div. 2015) (quoting R. 4:46-2(c)), certif. denied, 224 N.J. 124 (2016). The record is replete with material factual disputes over the central issue of why plaintiff retired without receiving knee surgery. Whether there was a justification for the passage of time is a dispute that could not be decided on summary judgment and is for the trier of fact.

We turn next to plaintiff's argument the motion judge erred by concluding plaintiff was not qualified under the LAD to assert an accommodation claim because he was unable to perform the essential duties of his job without a reasonable accommodation. Plaintiff asserts the motion judge misconstrued the LAD because

10

the question was whether plaintiff could perform the essential duties of his position after being afforded a reasonable accommodation. We agree.

Pursuant to Victor v. State, 203 N.J. 383, 410 (2010), a plaintiff must demonstrate: (1) he was disabled within the meaning of the LAD; (2) he was otherwise qualified to perform the essential functions of the job, with or without accommodations; and (3) he suffered an adverse employment action because of the disability. The employer has an affirmative obligation to reasonably accommodate a disabled employee.

The second prong of the LAD test "requires plaintiff to demonstrate that he or she is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without a reasonable accommodation." Victor, supra, 203 N.J. at 410. Therefore, a plaintiff may assert he would be able to perform the essential functions of his job with the reasonable accommodation requested. Ibid. In other words, the court must consider "whether [the] reasonable accommodation[] would enable the [plaintiff] to perform [the essential] functions[.]" Svarnas v. AT&T Commc'ns, 326 N.J. Super. 59, 75 (App. Div. 1999).

Here, the motion judge misunderstood prong two and relied upon materially disputed evidence to disqualify plaintiff from meeting it. The judge reasoned:

> Plaintiff advances the argument that defendant's expert Dr. Hunter testified that plaintiff could have returned to full duty employment if a knee replacement surgery was performed. []
>
> This argument is of no moment because plaintiff was not qualified under the NJLAD due to the fact he could not perform the essential functions of his position as a police detective.
>
> . . . .
>
> There is ample evidence in the record to support this conclusion. As Dr. Jaffe indicated in his evaluation of plaintiff, ["]I do not feel he is a candidate to return to work as a police officer either now or in the future based on the disability and evaluations from today[.]["]

Although plaintiff may not have been able to perform the job of detective without a reasonable accommodation, there was a material dispute as to whether he would have been able to perform his job with a reasonable accommodation, namely the surgery, which should have been presented to a jury. Plaintiff presented a prima facie case for a reasonable accommodation claim under the LAD and summary judgment was not appropriate.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0758-15T3