NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1110-15T1

BARBARA SALVERO,

 Plaintiff-Appellant,

v.

CITY OF ELIZABETH,

 Defendant-Respondent,

and

LIEUTENANT SOULNEER, PATRICK
SHANNON, JOHN BASTARDO,
DANIEL GEDDES, JOSEPH MULARZ,
and JAMES COSGROVE,

 Defendants.

___________________________________

 Argued October 25, 2017 – Decided December 1, 2017

 Before Judges Nugent and Geiger.

 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Docket No. L-1023-
 13.

 Charles J. Sciarra argued the cause for
 appellant (Sciarra & Catrambone, LLC,
 attorneys; Mr. Sciarra and Deborah Masker
 Edwards, on the brief).
 Christina M. DiPalo argued the cause for
 respondent (LaCorte Bundy Varady & Kinsella,
 attorneys; Ms. DiPalo and Robert F. Varady,
 on the brief).

PER CURIAM

 Plaintiff Barbara Salvero appeals from an October 23, 2015

order granting summary judgment to defendant City of Elizabeth. 1

After careful consideration of the record and applicable legal

principles of law, we reverse and remand for trial.

 I.

 Because we review this matter in the context of defendants'

motion for summary judgment, our recitation of the facts is derived

from the evidence submitted by the parties in support of, and in

opposition to, the summary judgment motion, viewed in the light

most favorable to plaintiff, and giving plaintiff the benefit of

all favorable inferences. See Angland v. Mountain Creek Resort,

Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins.

Co., 142 N.J. 520, 523, 536 (1995)).

 Plaintiff has been employed as a police officer by the City

of Elizabeth since the year 2000. In 2003, she filed a lawsuit

against the City and other individual defendants under the New

Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42,

1
 Plaintiff did oppose summary judgment being granted to the
individual defendants.

 2 A-1110-15T1
claiming she was subjected to a hostile work environment based on

racial and sexual harassment. The case went to trial. The jury

reached a verdict of no cause of action against plaintiff on

November 21, 2008.

 During the pendency of the 2003 case, plaintiff was assigned

to the Elizabeth Municipal Court, located in a separate building

from police department headquarters. Plaintiff continued with this

assignment for approximately six years after the conclusion of her

lawsuit. Plaintiff testified that when she was assigned to the

court, she was told by officers in the Port Authority Police that

members of her department had told them to stay away from her as

she could not be trusted because she was a "rat."

 Plaintiff further testified to several instances of

harassment that occurred after the conclusion of her 2003 lawsuit.

In 2009, she was followed in the police parking area by an unmarked

police car. The driver of the vehicle revved its engine and

"lunged" the vehicle at her. Plaintiff did not report this

incident to a superior, Internal Affairs, the Union County

Prosecutor's Office, or the Attorney General.

 On August 20, 2009, while plaintiff's car was parked in the

police parking area, a nail punctured her tire causing a flat.

When she returned to the area where she had parked her car, she

 3 A-1110-15T1
found three other nails in the space where she had parked, but no

nails elsewhere. Plaintiff did not report the incident.

 On June 29, 2010, while plaintiff's car was parked in the

police parking area, the driver's side door was dented and there

was a nail in her tire. On the same day, when she started the

engine, there was a strong urine odor emanating from the air

conditioning. Plaintiff did not report the incident.

 Plaintiff was followed and intimidated by another unmarked

police vehicle in 2011. Once again, plaintiff did not report the

incident.

 On January 21, 2011, plaintiff underwent surgery for injuries

she sustained in an off-duty motor vehicle accident. In November

2011, plaintiff asked her PBA representative, President Bob

Morris, if upon her return from surgery she could be assigned away

from headquarters because of the hostile work environment that

resulted from her 2003 lawsuit. Morris acknowledged there was

known hostility toward her and gained approval for her to be

assigned to light duty at the Municipal Court. On March 7, 2012,

plaintiff was cleared for light duty and was allowed to return to

work.

 One of the restrictions imposed upon plaintiff's return was

that she was not to make arrests. Plaintiff thought that

assignment to Municipal Court would be best for her because one

 4 A-1110-15T1
officer was deployed to the courtroom while another officer was

stationed immediately outside, and the officers themselves decided

where they would be stationed. On March 8, 2012, while she was

working at the court, plaintiff was ordered by the desk lieutenant

to the front desk of headquarters. Plaintiff contacted Morris who

later advised that plaintiff could remain at the court on light

duty.

 On March 22, 2012, plaintiff was again ordered to report to

the headquarters front desk. Plaintiff reached out to Morris and

the new PBA president, Richard Steinke, regarding the assignment.

Morris indicated he was being retaliated against for attempting

to assist her. Plaintiff testified she made an effort to contact

the person in charge of assignments through her PBA representative

to no avail.

 In March 2012, while plaintiff was getting bail documents for

a prisoner prepared at the front desk, plaintiff requested that

another officer prepare the prisoner to be escorted out of the

police department since she was on light duty and was not to

interact with prisoners. The officer refused to assist her even

though he knew about her light duty restriction.

 On March 30, 2012, Lieutenant Saulnier yelled at plaintiff

for allowing people up to his office even though she was not

actually responsible. Saulnier also yelled that "he was tired of

 5 A-1110-15T1
you" in front of other officers. Plaintiff immediately reported

the incident to her superior only to be met with ridicule and a

statement that he was sick of the childish behavior, that this was

high school nonsense, and further asked, "what's next, I going to

have to call an ambulance for her?"

 Plaintiff then contacted Anita Pritchard, the City Hall

Liaison for sexual harassment and whistle-blowing, regarding the

incident with Saulnier. Plaintiff believed it was appropriate,

under the sexual harassment policy, to reach out to a City liaison

if she felt uncomfortable reporting any incident to the police

department. Pritchard had told her that it was unusual for someone

from the police department to be calling the City's business

administration, but agreed to meet with her anyway.

 When plaintiff reported for work on April 9, 2012, prior to

her meeting with Pritchard, she found an old, dirty pacifier on

her work desk. Throughout the following days, plaintiff would

hear baby cries and laughing when she would walk by her fellow

officers.

 On April 10, 2012, plaintiff met with Pritchard to discuss

the incidents. Plaintiff explained to Pritchard how the 2003

lawsuit related to the threats, having no backup, and the situation

with her light duty. At the end of the interview, Pritchard told

 6 A-1110-15T1
plaintiff her complaint would be given to the Business

Administrator and appropriate measures would be taken.

 On April 19, 2012, plaintiff met with Sergeant Geddes and

Internal Affairs Officer John Bastardo for an Internal Affairs

(IA) interview. The interviewers refused to allow her to discuss

previous incidents of harassment as they related to her 2003

lawsuit.

 On August 20, 2012, plaintiff was told by a fellow officer

that high ranking officers were saying she was a "dumb bitch" and

it was the goal of the department to fire her.

 Plaintiff requested the results from the investigation of her

complaints on two separate occasions. Eight months after the IA

interview, plaintiff was faxed a one-line finding that the

complaints were unfounded. Plaintiff was aware that she could

have gone to the Union County Prosecutor's Office if she felt that

Internal Affairs did not do a thorough investigation. She did not

do so.

 On April 29, 2013, one month after filing her complaint in

this matter, plaintiff was notified by Sergeant McDonald that she

was being put back on patrol. Upon being notified of this, she

spoke to McDonald and advised him the Department was aware she was

being harassed and that she was fearful to work by herself and not

receive backup. Plaintiff also voiced this same complaint to

 7 A-1110-15T1
superiors. Plaintiff was officially assigned to patrol on June

3, 2013.

 Plaintiff alleges multiple instances of harassment during her

time on patrol. In either June or July 2013, an officer called

her a "bitch" and openly said to other officers that she was

"nothing but trouble[]" and "you don't want to know who that bitch

is."

 On July 7, 2013, plaintiff responded to a scene where two

groups of individuals were assaulting each other. She did not

receive backup when requested. When she called for backup, there

was a delay by an officer from her department and he failed to

assist plaintiff after arriving. Instead, the officer simply sat

on the hood of his patrol car and watched.

 On July 21, 2013, while she was working by herself, plaintiff

was called to a cellblock for a prisoner that needed to go to the

hospital. Plaintiff called another officer for assistance, but

he did not respond. Plaintiff then had to place a call on the

radio for the officer to respond, but he did not respond for over

twenty minutes. During the transport, the officer did not interact

with her at all.

 On November 13, 2013, the Municipal Court and Municipal

Prosecutor requested plaintiff call for an officer in her

department to respond to the court for trial. Plaintiff called

 8 A-1110-15T1
out for him on police radio at least three times with no reply.

After failing to reach the officer, plaintiff asked radio dispatch

to call the officer. When dispatch did so, he immediately

responded.

 On December 21, 2013, when plaintiff was at a homicide scene

with her partner, no one would speak to her. At the homicide

scene, plaintiff was in charge of identifying the officers working

at the scene and reporting their roles. None of the officers

would give her their names or roles at the scene. The only way

plaintiff was able to obtain the information was through her

partner.

 On December 29, 2013, a person became combative during an

incident at a Dunkin Donuts coffee shop. Plaintiff called out

over the police radio for assistance several times, but no one

from her department responded. As a result, the County police had

to respond to the call. It was only after County police arrived

on scene that an officer from her department arrived.

 Plaintiff alleges one last example of officers ignoring her

and not providing necessary information for her to do her job, but

does not indicate when in time this incident occurred. Plaintiff

and her partner assisted another officer regarding a person

arrested on an outstanding warrant. Again, the only way plaintiff

 9 A-1110-15T1
could obtain information about the person who was arrested was to

get it through her partner.

 During the time plaintiff was assigned to patrol from June

2013, until January 29, 2014, she made no complaints to her

supervisors about not being backed up. On January 30, 2014,

plaintiff submitted a private report she had written to Pritchard

and Captain Colon documenting the harassment and her complaints

about the department. Plaintiff further discussed with Colon that

she felt she was not being treated the same as other officers and

personally disclosed to him all of the alleged incidents of

harassment.

 On May 22, 2014, Internal Affairs interviewed plaintiff

regarding the complaints in her private report. Plaintiff did not

receive a copy or transcript of the interview.

 The City of Elizabeth Police Department first adopted a

Discrimination and Harassment in the Workplace Policy on June 16,

2015, long after the occurrence of the events relied on by

plaintiff and more than two years after this case was commenced.

 Plaintiff submitted a private report to a superior officer

regarding a Discrimination and Harassment in the Workplace Policy

test that was to be completed on the computer by each officer in

the Department. The second question asked: "Are you currently

aware of any situations within the Elizabeth Police Department

 10 A-1110-15T1
which are in direct violation of the Discrimination and Harassment

in the Workplace policy of 2015?" Plaintiff answered "yes." The

test was not capable of being passed unless the answer to the

question was "no." Consequently, plaintiff failed the test.

Plaintiff reported this to her superior and, when she advised she

would not change her answer, he changed the test result.

 On March 18, 2013, plaintiff filed a six-count complaint

against defendants the City, Patrick Shannon, John Bastardo,

Daniel Geddes, Joseph Mularz, and James Cosgrove. Plaintiff

alleged the City violated the LAD (count one); the City violated

the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-

1 to -14 (count two); aiding and abetting by Cosgrove (count

three); aiding and abetting by Shannon (count four); employer

liability (count five); and liability against the City for punitive

damages (count six). The City filed an answer on May 28, 2013.

On January 20, 2015, plaintiff filed an amended complaint

containing the same counts. The City filed an answer on February

4, 2015.

 In May 2014, plaintiff requested files from Internal Affairs

relating to her complaints. These files were never produced. As

a result, plaintiff served no interrogatories or notices to produce

on defendant and plaintiff did not depose any of the defendants.

 11 A-1110-15T1
 After three extensions, discovery closed on July 15, 2015.

The last discovery order stated: "There will be no further

extension of discovery." In lieu of propounding any written

discovery requests and depositions plaintiff's former counsel sent

informal letter requests for the relevant IA files.

 Plaintiff did not move to compel or further extend discovery

before the discovery end date. Plaintiff also noticed the

deposition of Sergeant Maloney, the primary investigator of

plaintiff's harassment complaints, and Officer Michael Tropeano,

who gave a taped recorded interview in connection with the IA

investigation, after discovery had already expired. Plaintiff's

former counsel claimed that he did not notice the depositions

earlier because he had not yet received the IA files.

 On August 6, 2015, defendant finally provided plaintiff with

the IA documents relating to the case, but not the recordings of

any taped interviews. On October 9, 2015, the trial court entered

an Order barring defendant from "introducing evidence relating to

[IA] investigations into [p]laintiff's complaints unless it had

produced that evidence in response to a discovery demand or court

order, or it was not demanded in discovery."

 On September 23, 2015, defendants moved for summary judgment

dismissing plaintiff's amended complaint in its entirety.

 12 A-1110-15T1
Plaintiff opposed the motion as to the City, but not the individual

defendants.

 On October 23, 2015, the trial court heard oral argument on

the motion. Plaintiff withdrew her CEPA claim against the City

(count two). In an oral decision, the court granted summary

judgment to defendants, dismissing plaintiff's amended complaint

with prejudice.

 The motion judge found that "plaintiff ha[d] failed to present

evidence to show that her protected activity, the lawsuit from

2003, caused her to suffer a hostile work environment[]" and that

"plaintiff hasn't raised a genuine issue of material fact regarding

an adverse employment action . . . we're talking about several

isolated incidents over a period of time which the City had no

opportunity to address in any kind of timely fashion to even

establish whether or not they happened." The Judge also held that

"I don't see where I can maintain this suit . . . against the

City. They do have a policy. It's there and the plaintiff is aware

of it. Plaintiff knows what [t]o [d]o, has a lawyer to assist her

at all times." This appeal followed.

 Plaintiff raises the following issues on appeal: (1) summary

judgment should have been denied because the material facts create

inferences that would allow a reasonable jury to conclude that the

City violated the LAD; (2) plaintiff engaged in protected

 13 A-1110-15T1
activities when she filed her 2003 lawsuit and this action; (3)

plaintiff suffered a retaliatory adverse employment action and was

subjected to a hostile work environment that was so severe and

pervasive that it altered the conditions of her employment; and

(4) the trial court erred in finding that the City had satisfied

the requirements for an affirmative defense under Aguas v. State,

220 N.J. 494 (2015).

 II.

 "We review the grant of summary judgment 'in accordance with

the same standard as the motion judge.'" Globe Motor Co. v.

Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217

N.J. 22, 38 (2014)). Summary judgment is appropriate where "the

pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of

law." R. 4:46-2(c); accord Brill, supra, 142 N.J. at 528-29.

 “An issue of fact is genuine only if, considering the burden

of persuasion at trial, the evidence submitted by the parties on

the motion, together with all legitimate inferences therefrom

favoring the non-moving party, would require submission of the

issue to the trier of fact.” R. 4:46-2(c). "The inquiry is

'whether the evidence presents a sufficient disagreement to

 14 A-1110-15T1
require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" Liberty Surplus Ins.

v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting

Brill, supra, 142 N.J. at 536). The motion judge's function is

not to "weigh the evidence and determine the truth of the matter

but to determine if there is a genuine issue for trial." Brill,

supra, 142 N.J. at 540 (citation omitted).

 "The motion court must analyze the record in light of the

substantive standard and burden of proof that a factfinder would

apply in the event that the case were tried." Igdalev, supra, 225

N.J. at 480 (citations omitted). "Thus, 'neither the motion court

nor an appellate court can ignore the elements of the cause of

action or the evidential standard governing the cause of action."

Ibid. (quoting Bhagat, supra, 217 N.J. at 38).

 III.

 In order to establish a prima facie claim for retaliation

under the LAD, plaintiff must demonstrate: (1) that she engaged

in protected activity; (2) the activity was known to the employer;

(3) plaintiff suffered an adverse employment decision; and (4)

there existed a causal link between the protected activity and the

adverse employment action. Battaglia v. United Parcel Serv. Inv.,

214 N.J. 518, 547 (2013).

 15 A-1110-15T1
 For purposes of the summary judgment motion, the City concedes

that plaintiff has satisfied the first two prongs of the

retaliation test. As a result of the City's concessions, our

analysis will focus on prongs three and four.

 N.J.S.A. 34:19-2(e) defines "retaliatory action" as "the

discharge, suspension or demotion of an employee, or other adverse

employment action taken against an employee in the terms and

conditions of employment." "As such, 'employer actions that fall

short of [discharge, suspension or demotion], may nonetheless be

the equivalent of an adverse action.'" Nardello v. Twp. of

Voorhees, 377 N.J Super. 428, 433-34 (App. Div. 2005) (alteration

in original) (quoting Cokus v. Bristol Myers Squibb Co., 362 N.J.

Super. 366, 378 (Law Div. 2002), aff'd, 362 N.J. Super. 245 (App.

Div.), certif. denied, 178 N.J. 32 (2003)). That being said, "not

every employment action that makes an employee unhappy constitutes

'an actionable adverse action.'" Id. at 434 (quoting Cokus, supra,

362 N.J. Super. at 378).

 Here, plaintiff does not claim that there was a loss of pay,

rank, or status. Nor does she claim that she was threatened with

termination, demoted, urged to resign, or asked to assume lesser

job responsibilities. As a result, plaintiff must demonstrate

that she was subjected to some other adverse employment action.

 16 A-1110-15T1
 Plaintiff contends that she was subjected to a hostile work

environment so intolerable that it altered the conditions of

employment to the point that the City's actions constituted an

adverse employment action. See Cokus, supra, 362 N.J. Super. at

386 (holding that while there was no evidence in the record that

the defendant engaged in retaliatory conduct towards plaintiff, a

hostile work environment could constitute an adverse employment

action).

 To establish a cause of action under the LAD for hostile work

environment, a plaintiff must satisfy each part of the four-part

test adopted in Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-

04 (1993).

 Specifically, they must show that the
 complained-of conduct (1) would not have
 occurred but for the employee's protected
 status, and was (2) severe or pervasive enough
 to make a (3) reasonable person believe that
 (4) the conditions of employment have been
 altered and that the working environment is
 hostile or abusive.

 [Shepherd v. Hunterdon Development Ctr., 174
 N.J. 1, 24 (2002) (citing Lehmann, supra, 132
 N.J. at 603-04).]

 In order to determine whether the conduct was "severe or

pervasive," the court must consider "whether a reasonable person

would believe that the conditions of employment have been altered

and that the working environment is hostile. Thus the second,

 17 A-1110-15T1
third, and fourth prongs are, to some degree, interdependent."

Ibid. (citations omitted).

 In assessing a hostile work environment claim, the court must

examine the totality of the plaintiff's employment environment,

and should consider the frequency of the discriminatory conduct,

the severity of the conduct, whether it is physically threatening

or humiliating, or merely an offensive statement, and whether it

unreasonably interferes with the employee's work performance. El-

Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super 145, 178 (App.

Div. 2005) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23,

114 S. Ct. 367, 371, 126 L. Ed. 2d 295, 302-03 (1993)). "Rather

than considering each incident in isolation, courts must consider

the cumulative effect of the various incidents, bearing in mind

'that each successive episode has its predecessors, that the impact

of the separate incidents may accumulate, and that the work

environment created may exceed the sum of the individual

episodes.'" Lehmann, supra, at 607 (quoting Burns v. McGregor

Elec. Indus., 955 F.2d 559, 564 (8th Cir.1992). Consequently, "a

discrimination analysis must concentrate not on individual

incidents but on the overall scenario." Ibid. (quoting Andrews

v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990))

 "Under the first prong of Lehmann, a plaintiff must show by

a preponderance of the evidence that the impermissible conduct

 18 A-1110-15T1
would not have occurred but for plaintiff's protected status."

Shepherd, supra, 174 N.J. at 24. Here, plaintiff contends that

she is a protected person under the LAD because she filed a prior

lawsuit alleging she was subjected to a hostile work environment

based on racial and sexual harassment. In that respect, the LAD

provides that it is unlawful "to take reprisals against any person

because that person has opposed any practices or acts forbidden

under [the LAD] or because that person has filed a complaint [or]

testified . . . in any proceeding under [the LAD.]" N.J.S.A.

10:5-12(d).

 A reasonable jury could infer that the complained-of conduct

was in retaliation for her protected activities. Because plaintiff

opposed conduct forbidden under the LAD by filing her prior LAD

action and has linked the complained-of conduct to those protective

activities, plaintiff has satisfied Lehmann's first prong for

purposes of withstanding defendant's summary judgment motion. See

Shepherd, supra, 174 N.J. at 24-25; Woods-Pirozzi v. Nabisco Foods,

290 N.J. Super 252, 266 (App. Div. 1996).

 Here, because the harassment plaintiff alleges is not

discriminatory or retaliatory on its face, plaintiff must make a

prima facie showing that the harassment would not have occurred

but for her protected conduct. There is no specific test for

determining whether or not plaintiff has met this burden. "All

 19 A-1110-15T1
that is required is a showing that it is more likely than not that

the harassment occurred because of the plaintiff's [protected

conduct]." Lehmann, supra, 132 N.J. at 605. "Common sense

dictates that there is no LAD violation if the same conduct would

have occurred regardless of the plaintiff's [protected conduct]."

Id. at 604. Plaintiff testified that the harassment was the result

of her filing the 2003 litigation and her subsequent complaints

to superiors.

 Viewed cumulatively in a light most favorable to plaintiff,

the record in this matter illustrates that plaintiff was subjected

to an ongoing, repetitive, and retaliatory lack of support, lack

of cooperation, and failure to timely respond to her calls for

assistance, which are unique to plaintiff. On more than one

occasion, plaintiff called for assistance to no avail, was required

to have others call in when she needed support, and was required

to speak through her partner to do her job correctly. The fact

that immediate support was given after someone other than plaintiff

reported such incidents supports plaintiff's claim that the same

conduct would not have occurred but for her protected conduct.

Given plaintiff's history at the department, which yielded her

protected status, a reasonable fact-finder could conclude it was

more likely than not the two conditions are connected.

 20 A-1110-15T1
 The next requirement is that the alleged harassing conduct

be "severe or pervasive." Lehmann, supra, 132 N.J. at 606. The

Court "emphasize[d] that it is the harassing conduct that must be

severe or pervasive, not its effect on the plaintiff or on the

work environment. Ibid. In evaluating whether the harassment

alleged was sufficiently severe or pervasive to alter the

conditions of employment that results in a hostile work

environment, the finder of fact shall consider the question from

the perspective of a reasonable person. Id. at 611-12.

 "Within the totality of circumstances, there is neither a

threshold 'magic number' of harassing incidents that gives rise,

without more, to liability as a matter of law nor a number of

incidents below which a plaintiff fails as a matter of law to

state a claim." Taylor v. Metzger, 152 N.J. 490, 499 (9998)

(citations omitted). "[T]he required showing of severity or

seriousness of the harassing conduct varies inversely with the

pervasiveness or frequency of the conduct." Lehmann, supra, 132

N.J. at 607 (alteration in original) (quoting Ellison v. Brady,

924 F.2d 872, 878 (9th Cir. 1991)). However, there is no

requirement that the harassing conduct occur closely in time.

 Plaintiff alleges she was subjected to a hostile and uniquely

dangerous workplace environment when assistance and backup were

either not provided or significantly delayed. Not receiving needed

 21 A-1110-15T1
backup and support would make even the most reasonable person in

plaintiff's situation feel like their workplace condition had

shifted to one of hostility and danger. In addition, the alleged

offensive conduct occurred repeatedly over a significant period

of time. Consequently, a reasonable fact-finder could conclude

that the effect of not receiving adequate support, cooperation,

or assistance during the course of her work was sufficiently severe

or pervasive to alter the conditions of employment and create a

hostile work environment. Thus, plaintiff has alleged sufficient

facts meeting all four prongs of the Lehmann test to survive

summary judgment.

 Under the fourth prong of the test for retaliation under the

LAD, plaintiff must demonstrate a causal link between the protected

activity and the adverse employment action, which in this case is

a hostile work environment. Battaglia, supra, 214 N.J. at 547.

"[T]he mere fact that [an] adverse employment action occurs after

[the protected activity] will ordinarily be insufficient to

satisfy the plaintiff's burden of demonstrating a causal link

between the two." Young v. Hobart West Group, 385 N.J. Super.

448, 467 (App. Div. 2005) (quoting Krouse v. Am. Sterilizer Co.,

126 F.3d 494, 503 (3d Cir. 1997)). "Where the timing alone is not

'unusually suggestive,' the plaintiff must set forth other

evidence to establish a causal link." Ibid. For example, "where

 22 A-1110-15T1
there is a lack of temporal proximity, circumstantial evidence of

a pattern of antagonism following the protected conduct can also

give rise to the inference" of causation. Farrell v. Planters

Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (citations

omitted). See also Estate of Roach v. TRW, Inc., 164 N.J. 598,

612 (2000) ("examining whether a retaliatory motive existed,

jurors may infer a causal connection based on the surrounding

circumstances."). Here, the alleged harassment started soon after

the jury issued its verdict in the 2003 lawsuit, and continued to

occur on an ongoing basis. Not only has plaintiff shown a pattern

of antagonism following her protected conduct, a reasonable jury

could infer a causal connection based on the nature of the

offensive conduct.

 Finally, we address whether the City is protected from

vicarious liability for the conduct of its employees and

supervisors under the facts of this case. When no tangible

employment action is taken, a defending employer may assert the

two-pronged affirmative defense to liability or damages adopted

in Aguas. Aguas, supra, 220 N.J. at 524. To establish that

defense, the defendant employer has the burden to prove, by a

preponderance of the evidence, that (a) "the employer exercised

reasonable care to prevent and to correct promptly [the] harassing

behavior;" and (b) "the plaintiff employee unreasonably failed to

 23 A-1110-15T1
take advantage of preventive or corrective opportunities provided

by the employer or to otherwise avoid harm." Id. at 524 (citing

Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct.

2275, 2293, 141 L. Ed. 2d 662, 689 (1998); Burlington Industries

v. Ellerth, 524 U.S. 742, 746, 118 S. Ct. 2257, 2262, 141 L. Ed.

2d 633, 644 (1998)). The Court emphasized, however, that "the

defense provides no protection to an employer whose sexual

harassment policy fails to provide 'meaningful and effective

harassment policies and procedures for employees to use in response

to harassment.'" Id. at 522 (quoting Gaines v. Bellino, 173 N.J.

301, 317 (2002)). "The employee may rebut the elements of the

affirmative defense." Id. at 524.

 In Gaines, the Court found the existence of the following

factors in an anti-harassment policy relevant in determining

whether the policy was effective: (1) a formal prohibition of

harassment; (2) formal and informal complaint structures; (3)

anti-harassment training; (4) sensing and monitoring mechanisms

for assessing the policies and complaint procedures; and (5)

unequivocal commitment to intolerance of harassment demonstrated

by consistent practice. Gaines, supra, 173 N.J. at 313 (citations

omitted).

 Plaintiff contends that because the City did not have a

dedicated anti-harassment policy and procedures in place during

 24 A-1110-15T1
the period in question, it has not satisfied the requirements for

an affirmative defense under Aguas. We agree.

 Here, the policy and procedures relied upon by the City did

not exist when the complained-of conduct occurred. Instead, the

City implemented the harassment policy and monitoring mechanisms

long after plaintiff filed this lawsuit. Plaintiff contends that

even then, the City only did so to give the appearance of an

effective policy rather than instituting meaningful procedures to

eliminate harassment in the workplace.

 The City has not shown that the policy in place during the

period in question was meaningful and effective. Furthermore, the

City has not provided any evidence that there was anti-harassment

training or supervisors in place during the period in question.

Nor has the City established that it had effective monitoring

mechanisms to check the policies and complaint structures. See

Gaines, supra, 173 N.J. at 313.

 We further note that plaintiff appears to have utilized the

limited opportunities presented to her. During the period of

alleged harassment, plaintiff testifies that "according to the

sexual harassment policy, if [she] felt uncomfortable reporting

any incidents in the police department, that [her] option was to

reach out to the liaison . . . at city hall." Consequently,

plaintiff abided by the policy when she reported potentially

 25 A-1110-15T1
harassing conduct to her superiors. On this record we cannot say

that plaintiff "unreasonably failed to avail herself of the

employer's preventative or remedial apparatus[.]" Aguas, supra,

220 N.J. at 521 (citation omitted).

 We hold that the trial court erred by concluding that

defendant had established an affirmative defense to vicarious

liability or damages for the harassing conduct of its employees

as established in Ellerth and Faragher and adopted by the Court

in Aguas. The City has not met either element of that affirmative

defense. Nor has the City demonstrated that it provided meaningful

and effective harassment policies and procedures for employees to

use in response to harassment during the time period in question.

 Viewed cumulatively, the acts alleged by plaintiff are

sufficient to present a hostile work environment claim to a jury.

We, therefore, vacate the order granting defendant summary

judgment and remand this matter for trial.

 Reversed and remanded. We do not retain jurisdiction.

 26 A-1110-15T1