**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3929-16T2

NEW JERSEY HIGHER
EDUCATION STUDENT
ASSISTANCE AUTHORITY,

     Plaintiff-Appellant,

v.

ABIGAIL SIAW, PHILIP
SIAW and FELICIA MENSAH,

     Defendants-Respondents.

_____

Submitted July 24, 2018 – Decided January 15, 2019

Before Judges Ostrer and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1638-16.

Russell P. Goldman, attorney for appellant.

Respondents have not filed briefs.

The opinion of the court was delivered by

OSTRER, J.A.D.

Plaintiff, the New Jersey Higher Education Student Assistance Authority, brought suit against a student borrower, Abigail Siaw, and her co-signers to recover the balance due on two outstanding student loans. After a bench trial, Judge Arthur Bergman found that defendants had defaulted, but the Authority did not present sufficient proof of the loans' interest rates. The court therefore allowed recovery of the loans' principal, plus costs of collection, but not the loans' accrued interest. The Authority appeals, and we affirm.

I.

We discern the following facts from the trial record. To defray the costs of attending Rutgers University, Abigail obtained two NJCLASS loans from the Authority, totaling $24,309.[1] See N.J.A.C. 9A:10-6.1 to -6.19 (describing the NJCLASS loan program). The first loan, issued in 2007, was for $16,700. The second, issued in 2008, was for $7,609. Philip Siaw co-signed the first loan and Felicia Mensah co-signed the second. While in school, Abigail's loan payments were deferred. Abigail completed her course work in January 2010, and her payments became due shortly afterwards.

---

[1] As she and one of her co-signers share a surname, we utilize first names for convenience, and mean no disrespect in doing so.

A-3929-16T2

Initially, Abigail did not make any payments, and the Authority deemed the loans in default in September, 2010. Upon default, NJCLASS borrowers become "liable for the entire balance of the loan." N.J.A.C. 9A:10-6.16. Abigail testified that she was notified by the Authority's counsel of her default. She contended he agreed to accept monthly payments of $200, which she submitted to him starting in 2011.

In March 2016, the Authority filed a complaint to recover the loans' principal balance due, accrued interest, and collection costs. Abigail continued to make payments through February 2017. At trial in April 2017, the Authority demanded $15,667.41 for the 2007 loan, $7,397.14 for the 2008 loan, and $5,252.98 in collection costs, totaling $28,317.53. The Authority conceded that, at the time of trial, defendants had paid $17,942.75 toward the two loans – $12,355.55 allocated to the 2007 loan, and $5,587.20 allocated to the 2008 loan.[2]

In support of its claim, the Authority introduced into evidence, through a student loan investigator, the two promissory notes, accompanied by identical documents entitled "NJCLASS Terms, Conditions and Definitions." The notes set forth the loan amounts, a maximum term of twenty years, but not the interest

---

[2] Abigail stated in her answer that the payments consisted of her monthly $200 payments, plus garnished income tax refunds.

A-3929-16T2

rate. Rather, it provided that the interest was "as set forth in the NJCLASS Loan Terms, Conditions, and Definitions." However, those documents did not actually set forth the interest rate. Rather, they referred to a third document. The "Terms, Conditions and Definitions" stated,

> The borrower(s) and cosigner(s) will be provided a copy of the Disclosure Statement revealing the interest rate for this Note, the amount of the payment, the number of payments that must be made and other terms and conditions. If any information on the Disclosure Statement conflicts with the information on this Note, the information on the Disclosure Statement governs.

The Authority did not produce the Disclosure Statements, nor did it provide proof that it supplied them to defendants. The Authority introduced print outs from its "Direct Loan System" dated less than a week before trial, which purported to set forth the interest rates on the two loans.[3] Each document also included a line that read, "DATE DISCLOSURE: <u>08</u> <u>19</u> <u>2009</u>." The Authority presented no testimony explaining the meaning of those entries, and,

---

[3] The print out for the 2007 loan displayed a 6.55 percent interest rate, applicable to the periods August 19, 2009 to January 31, 2010 and March 9, 2010 to December 9, 2013; and a 7.3 percent interest rate for the period January 9, 2014 to July 9, 2027. The Terms and Conditions provided that the interest rate increased 0.75 percent beginning with the forty-ninth month of repayment. The print out related to the 2008 loan displayed a 7.92 percent interest rate for the two periods, August 19, 2009 to January 31, 2010, and March 9, 2010 to December 9, 2013, and an 8.67 percent from January 9, 2014 to August 9, 2028.

A-3929-16T2

as noted, did not present any evidence showing it disclosed any interest rates to Abigail when the loans were made.

The "Terms, Conditions and Definitions" also entitled the Authority to "reasonable collection agency and attorneys' fees and other collections costs." The Authority's witness testified that the agency sought collection costs equal to the nineteen percent. The witness did not explain the basis for the nineteen percent figure, but the Authority's counsel later stated that the amount sought was his fee.

Appearing pro se, Abigail did not directly challenge the Authority's loan documentation at trial, nor appear as a witness in her own defense.[4] In her opening statement, she asked the court to allow her and her parents to continue making monthly payments. Abigail explained that, because of financial hardships, they could not pay the lump sum due.

Judge Bergman found that the notes were issued and the principal amounts disbursed, but the Authority had failed to meet its burden to prove the interest rates due under the two notes. He observed that the Authority did not prove that the disclosure statements were ever provided to defendants. The judge rejected

---

[4]  The court questioned Abigail briefly to confirm when she completed her studies and graduated. Called as a witness in the Authority's case, Abigail confirmed she executed the notes, but declined to admit the amount due.

the Authority's argument that the 2017 print outs sufficed as proof of the interest rates. Notably, the documents did not provide evidence of the interest rate at time of disbursement, or that defendants ever received disclosure statements showing the interest rates. In light of that failure of proof, the court found that the Authority had failed to establish its entitlement to any interest on the loans. The court converted all of defendants' payments – $12,355.55 toward the 2007 loan amount of $16,700, and $5,587.20 toward the 2008 loan amount of $7,609 – as reductions of principal. The judge therefore found that the principal amounts still due were $4,344.45 on the 2007 note, and $2,021.80 on the 2008 note. The court also found that nineteen percent of those amounts was a reasonable cost of collection, and entered judgment for the total of $7,575.85 plus post-judgment interest.

The Authority moved for a new trial, contending the decision was against the weight of the evidence. Citing the print outs, the Authority argued it had proved the interest rates. The Authority also contended that the court erred in retroactively reallocating defendants' payments toward reduction of principal. The court denied the motion.

A-3929-16T2

II.

On appeal, the Authority renews these arguments.[5] The Authority argues the record contains sufficient proof of the loans' interest rates. Furthermore, it contends that defendants did not contest the interest rates, nor deny receipt of the disclosure statements when the loans were disbursed. In particular, as defendants did not raise these points as an affirmative defense, the Authority asserts it had no burden to respond.

We are unpersuaded. In its action on the notes, the Authority had the burden, as in any contract action, to prove that the Authority and defendants "entered into a contract containing certain terms." Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charge (Civil) § 4.10A "The Contract Claim – Generally" (May 1998)). The Authority bore the burden, in presenting its prima facie case, to establish the interest rates due on the notes. Under the circumstances, the interest rate was an essential term of a loan agreement. See Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 473-74 (App. Div. 1978) (holding that the

---

[5] The Authority's notice of appeal refers only to the trial judgment. However, its case information statement refers also to the order denying the new trial motion. Defendants' brief was suppressed, after they failed to timely correct deficiencies in a non-conforming brief.

A-3929-16T2

interest rate was an omitted essential term of an alleged agreement to provide a $2 million line of credit); cf. Satellite Ent. Ctr. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002) (contrasting Malaker, where the interest rate was an "essential provision[ ] that went to the heart of the alleged agreement" with an agreement to pay a commercial tenant $175,000 to vacate premises, where interest upon the unpaid amount was an "incidental term[ ]").

Each loan contract consisted of three essential documents – the promissory note, the "Terms, Conditions and Definitions," and the Disclosure Statement. As discussed above, the interest rate was disclosed only in the last document. Yet, the Authority did not introduce it into evidence. We agree with Judge Bergman that the pre-trial print outs did not suffice to establish the interest rates chargeable under the notes. We do so for two reasons.

First, the Authority was required to produce the loans' disclosure statements. N.J.R.E. 1002, the "Best Evidence Rule," requires an original writing to prove its contents, when the writing's contents are material to the dispute, and production is not otherwise excused. There is no doubt that the contents of the disclosure statements were material to the Authority's claim. The disclosure statements set the interest rates, and proof of that was an essential element of the Authority's claim. See State v. Ruta, 112 N.J.L. 271, 273 (E. &

A. 1934) (holding that the best evidence rule required production of conditional sales contract to establish party's right to repossess car sold thereunder); see also 6 Weinstein's Federal Evidence § 1002.05 (2018) (stating generally that "legal transactions that can be reduced to a writing, such as those involving . . . contracts . . . are subject to the best evidence rule because an original is needed to prove content that has legal significance"); JP Morgan Chase Bank, N.A. v. Rabel, 894 N.Y.S.2d 857, 860 (Civ. Ct. 2010) (holding that a bank employee's testimony concerning terms of contract violated best evidence rule).

Yet, the Authority failed to produce the original disclosure statements or duplicates. See N.J.R.E. 1003 (governing admissibility of duplicates). Furthermore, proof of the interest rate by other evidence was not admissible, as the Authority did not establish that the disclosure statements were lost, destroyed, unobtainable, or in defendants' possession. See N.J.R.E. 1004.

Second, even if the print outs were admissible to prove the interest rate set forth in the Disclosure Statements, the documents fell short of accomplishing that purpose. Plaintiff had the burden of proving its entitlement to relief, including its claim for interest, and failed to present any evidence showing it made disclosure of the interest rates when the loans were made and, concomitantly, that Abigail agreed to the purported interest rates. We are not

persuaded that the loan print outs, which included interest rates, filled the void in plaintiff's proofs; they were prepared just prior to trial and there is no evidence the purported interest rates were ever communicated to Abigail. The print outs include a reference to "DATE DISCLOSURE: 08 19 2009," but plaintiff failed to present evidence explaining its meaning. In sum, plaintiff presented no evidence establishing that disclosure of the interest rates occurred at any time or that Abigail agreed to any particular rates of interest.

We recognize that a court can supply an omitted essential term of a "sufficiently defined" contract that is "reasonable in the circumstances." Restatement (Second) of Contracts § 204 (Am. Law Inst. 1981); Pacifico v. Pacifico, 190 N.J. 258, 266-67 (2007). However, this rule applies when the parties did not agree to the term in the first place. Here, the Terms, Conditions and Definitions document indicates that there were agreed upon interest rates, which were set forth in the Disclosure Statements. The Authority simply failed to offer them into evidence.

Our Court has also held that the failure to agree to an essential term renders an agreement unenforceable. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992); Malaker, 163 N.J. Super. at 474. Instead, a party may recover in quantum meruit. Weichert, 128 N.J. at 437, 440-41 (remanding so that a

reasonable value of the party's services could be determined on the basis of proofs). However, the Authority did not ask for relief through quantum meruit, either before the trial court or on appeal, nor did it provide proof of what a reasonable interest rate would have been. Therefore, we are not obliged to reach the issue. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Absent proof of the interest rates, the Authority established only the principal amount of the loans, and the amount paid. In view of such proofs, the trial court appropriately entered judgment for the remaining principal balance due, after applying defendants' payments toward principal only, and adding the cost of collection.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                A-3929-16T2