**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1878-17T3

BERK AND BERK AT CHERRY
TREE, LLC,

     Plaintiff-Appellant,

v.

NELSON, BROWN, HAMILTON &
KREKSTEIN, LLC, a/k/a NELSON
BROWN & CO., f/k/a NELSON,
LEVINE, de LUCA & HORST, LLC,
a/k/a NELSON, LEVINE, de LUCA
& HAMILTON, LLC,

     Defendant,

and

KENNETH T. LEVINE, DANIEL J.
de LUCA, and de LUCA LEVINE LLC,

     Defendants-Respondents.

_____

Argued December 6, 2018 – Decided April 12, 2019

Before Judges Simonelli, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2923-16.

Robert M. Rich argued the cause for appellant.

Raymond E. Mack argued the cause for respondents (de Luca Levine LLC, attorneys; Raymond E. Mack, of counsel; Michael S. Munger, of counsel and on the brief; Meghan P. Micciolo, on the brief).

PER CURIAM

Plaintiff appeals from the September 28, 2017 order granting defendants' motion for summary judgment and denying plaintiff's motion for summary judgment. We affirm for the following reasons.

In March 2011, plaintiff, Berk and Berk at Cherry Tree, LLC, entered a five year and five month commercial real estate lease commencing June 1, 2011, with law firm Nelson, Levine, de Luca & Horst, LLC (NLdH) for office space in Cherry Hill, New Jersey. NLdH was a Pennsylvania limited liability corporation formed in 2000 with approximately eighty lawyers and six offices. It was headquartered in Blue Bell, Pennsylvania. Individual defendants Daniel de Luca and Kenneth Levine were two of the founding members of NLdH. The Chief Operating Officer of the firm signed the lease on behalf of NLdH. The members did not sign the lease or execute personal guarantees. In May 2012, Nelson, Levine, de Luca & Horst, LLC became Nelson, Levine, de Luca &

Hamilton, LLC. The newly named firm continued to make payments under the original lease with plaintiff.

de Luca and Levine worked in the property insurance subrogation practice group out of NLdH's Blue Bell, Pennsylvania office. The subrogation group was not located in Cherry Hill, though the group used the Cherry Hill office for occasional depositions and meetings.

On August 1, 2014, de Luca and Levine resigned as members of NLdH along with five other lawyers from the subrogation group to form a new firm, de Luca Levine, LLC (dL or de Luca Levine). The new firm moved to a separate space from NLdH and did not share accounts, vendor agreements, management structure, equipment, or furniture. dL did offer employment to some employees of NLdH's subrogation practice.

After de Luca and Levine left, NLdH changed its name to Nelson, Brown, Hamilton & Krekstein, LLC (Nelson Brown). Clients affected by the departure of de Luca and Levine were given the choice to remain with Nelson Brown, transfer to dL, or take their business to another firm. In 2014, Nelson Brown sued dL to recover fees from contingency matters for work done by attorneys at NLdH. They resolved the suit by a confidential settlement agreement.

In September 2014, Nelson Brown advised plaintiff a number of attorneys and clients had left the firm and they would be unable to pay rent. On October 1, 2014, Nelson Brown stopped paying rent to plaintiff for the Cherry Hill, New Jersey office. Nelson Brown ceased operations in 2015.

On August 8, 2016, plaintiff sued defendants de Luca and Levine individually and dL (the dL defendants), as well as Nelson Brown and both iterations of NLdH, seeking damages for breaking the lease. Upon conclusion of discovery, the dL defendants moved for summary judgment and plaintiff cross-moved for summary judgment.

On September 28, 2017, the trial court heard oral argument on the motions for summary judgment. After argument, the motion judge granted summary judgment in favor of the moving dL defendants and issued a decision from the bench. Utilizing the uncontested statements of material facts submitted, the judge determined that a substantial part of the subrogation practice moved from NLdH to dL, however, no equipment, property, computers, or other items were transferred from the old firm to the new firm, nor were files taken when the attorneys initially left the firm.

The judge found Nelson Brown, not dL, was the successor firm to NLdH, because it had continued to operate for nine months after de Luca and Levine

A-1878-17T3

left.  The judge also rejected plaintiff's claim under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34, and found "no evidence of an actual intent to hinder, delay or defraud a creditor."  The judge found there was no transfer of NLdH assets, and de Luca and Levine left before NLdH, now Nelson Brown, was sued or threatened with suit.  On December 11, 2017, the trial court dismissed the remaining claims for lack of prosecution.  This appeal followed.

On appeal, plaintiff argues the dL defendants withdrew substantial property from NLdH immediately prior to the default on the subject lease, are liable for the debts of NLdH as its successor, and violated the UFTA.  We disagree.

When we review a grant of summary judgment, we use the same standard as the trial court.  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).  A court should grant summary judgment, "'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Ibid. (quoting R. 4:46-2(c)).  The evidence must be viewed in "the light most favorable to the non-moving party."  Mem'l Props., LLC v. Zurich Am. Ins. Co.,

210 N.J. 512, 524 (2012). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co., 225 N.J. at 479 (alterations in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)).

In Department of Environmental Protection v. Ventron Corp., our Supreme Court stated "a corporation is a separate entity from its shareholders, and . . . a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." 94 N.J. 473, 500 (1983) (citing Lyon v. Barrett, 89 N.J. 294, 300 (1982)). "In the absence of fraud or injustice, courts generally will not pierce the corporate veil to impose liability on the corporate principals." Lyon, 89 N.J. at 300. Essentially, that is the relief plaintiff seeks.

New Jersey corporate law generally does not impose liability on a transferee for the debts and liabilities of a transferor. Portfolio Fin. Servicing Co. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 624-25 (D.N.J. 2004). This general rule is subject to four exceptions none of which are triggered by the record herein: "(i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller;

or (iv) the transfer of assets is for the fraudulent purpose of escaping liability." Id. at 625.

Our review of the record supports the motion judge's conclusion the dL defendants are not successors to NLdH or Nelson Brown because Nelson Brown, a much larger firm, continued after de Luca and Levine withdrew from the firm and paid rent to plaintiff. The dL defendants did not agree to assume NLdH's debts and obligations. When de Luca and Levine left the firm, there was no consolidation or merger, and dL was not a continuation of the prior firm. Nor did dL expressly or implicitly agree to assume NLdH's debt. See ibid.

> In determining whether a successor corporation implicitly assumed an obligation of its predecessor, the following factors are relevant: (a) whether the successor's conduct indicated its intention to assume the debt; (b) whether the creditor relied on the conduct and the effect of any reliance; and (c) whether the successor's representatives admitted liability.
>
> [Ibid.]

Plaintiff alleged no conduct that would suggest the dL defendants intended to assume the lease. The dL defendants did not operate out of the leased Cherry Hill office and the attorneys in Cherry Hill did not work on subrogation matters nor were they hired by dL. There was no conduct that indicated dL had any intention of assuming the debts of NLdH. See ibid.

7

The record does not support plaintiff's assertion the dL defendants fraudulently transferred assets when clients took their business to dL. After the dL defendants departed, NLdH sent its clients a letter offering the option of moving to dL, remaining with NLdH, or selecting an alternative firm to continue representation. The clients controlled their choice of attorney.

Plaintiff also argues the dL defendants fraudulently transferred assets, including millions of dollars in files, clients, and a functioning practice group, when they left. Plaintiff characterizes the assets as "good will" and urges us to extend principles of equitable distribution, relevant in divorce proceedings, to this case. See, e.g., Dugan v. Dugan, 92 N.J. 423, 428-29 (1983); Slutsky v. Slutsky, 451 N.J Super. 332, 359-60 (App. Div. 2017). We fail to see any parallel in these two situations. Although "good will" may be subject to equitable distribution in limited divorce cases, we reject the suggestion good will is a transferred asset for the purposes of imposing liability to third parties upon lawyers who leave a firm.

Successor liability may be imposed when there is a de facto merger or continuation of businesses. We consider four factors when determining whether a de facto merger or continuation occurred:

> "(i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a

cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership [or] shareholders."

[Woodrick v. Jack J. Burke Real Estate, Inc., 306 N.J. Super. 61, 73 (App. Div. 1997) (quoting Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 275-76 (D.N.J. 1994)).]

None of these factors are present here. de Luca and Levine were founding members of NLdH, but were not engaged in day-to-day management when they left. The new firm had its own office space, vendors, and equipment; the surviving firm, Nelson Brown, continued to operate after defendants' departure, and dL did not assume the liabilities of Nelson Brown.

Plaintiff also asserts it presented a prima facie case under the UFTA. Plaintiff's theory is dL violated the UFTA when it fraudulently transferred assets from NLdH without furnishing valuable consideration. Plaintiff argues client lists and litigation files constitute an asset under the UFTA and that "badges of fraud"[1] were present in the transaction. We reject such a conclusion.

---

[1] Badges of fraud are present when:

The UFTA defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  N.J.S.A. 25:2-22.  Under the UFTA, an asset is "property of [the] debtor[.]"  N.J.S.A. 25:2-21.

---

a.  The transfer or obligation was to an insider;
b.  The debtor retained possession or control of the property transferred after the transfer;
c.  The transfer or obligation was disclosed or concealed;
d.  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
e.  The transfer was of substantially all the debtor's assets;
f.  The debtor absconded;
g.  The debtor removed or concealed assets;
h.  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i.  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j.  The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k.  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[N.J.S.A. 25:2-26.]

The record does not support the conclusion NLdH transferred its assets to dL, whether for purposes fraudulent or otherwise. A group of attorneys left the firm with the intention to start a new firm. A law firm does not own its clients or cases and cannot transfer a client to another firm against a client's consent. Further, plaintiff offered no evidence to suggest dL's leaving NLdH was done with "actual intent to hinder, delay, or defraud any creditor of the debtor[.]" N.J.S.A. 25:2-25(a).

We agree with the conclusion of the motion judge. The badges of fraud are not present in this case nor are there facts to suggest a violation of the UFTA.

Finally, the record does not support the conclusion the dL defendants left the firm to escape liability to the plaintiff. This is especially true because the rent debt in question did not arise until October 2014, after the dL defendants split from NLdH in August 2014.

We do not address plaintiff's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1878-17T3